1   LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   JOHN K. GRANT (169813)
    SYLVIA SUM (207511)
3   100 Pine Street, Suite 2600
    San Francisco, CA  94111
4   Telephone:  415/288-4545
    415/288-4534 (fax)
5         – and –
    WILLIAM S. LERACH (68581)
6   401 B Street, Suite 1700
    San Diego, CA  92101
7   Telephone:  619/231-1058
    619/231-7423 (fax)
8
    [Proposed] Lead Counsel for Plaintiffs
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13
    JAMES DOLAN, On Behalf of Himself and      )   No. C-04-4156-JW
14  All Others Similarly Situated,             )
                                               )   CLASS ACTION
15                            Plaintiff,        )
                                               )   NOTICE OF MOTION AND MOTION TO
16          vs.                                )   APPOINT CHARTER TOWNSHIP OF
                                               )   CLINTON POLICE AND FIRE
17  INFINEON TECHNOLOGIES AG, et al.,          )   RETIREMENT SYSTEM, MARK AND
                                               )   KAREN GURVEY, AND CENTRAL
18                            Defendants.       )   LABORERS' PENSION FUND AS LEAD
                                               )   PLAINTIFF AND TO APPROVE LEAD
19  _____)   PLAINTIFF'S SELECTION OF LEAD
                                                   COUNSEL; MEMORANDUM OF POINTS
20                                                 AND AUTHORITIES IN SUPPORT
                                                   THEREOF
21
                                                   DATE:          January 3, 2005
22                                                 TIME:          9:00 a.m.
                                                   COURTROOM:     Honorable James Ware
23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. SUMMARY OF PENDING ACTIONS...............................................................3

III. STATEMENT OF FACTS ...................................................................................4

    A. The Central Laborers' Group Satisfies All Three Requirements of §21D(a)(3)(B) of the PSLRA and Should Be Appointed Lead Plaintiff...............6

        1. Notice Was Properly Published Under the PSLRA ...................................6

        2. The Central Laborers' Group Possesses the Largest Overall Financial Interest and Should Be Presumed Lead Plaintiff ........................7

        3. The Central Laborers' Group Meets the Requirements of Rule 23 of the Federal Rules of Civil Procedure...........................................................8

            a. The Central Laborers' Group's Claims Are Typical of the Claims of the Class .........................................................................9

            b. The Central Laborers' Group Will Fairly and Adequately Represent the Interests of the Class ...............................................10

    B. This Court Should Approve the Central Laborers' Group 's Selection of Lead Counsel ..........................................................................................................11

IV. CONCLUSION....................................................................................................12

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW

- i -

1

# TABLE OF AUTHORITIES

2

**Page**

3

*Durrett v. John Deere Co.*,
  150 F.R.D. 555 (N.D. Tex. 1993) ...............................................................................10

4

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ..............................................................................9

5

*Greebel v. FTP Software*,
  939 F. Supp. 57 (D. Mass. 1996) ..................................................................................8

6

7

*In re Advanced Tissue Scis. Sec. Litig.*,
  184 F.R.D. 346 (S.D. Cal. 1998) ...................................................................................9

8

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .............................................................................8, 9, 11

9

10

*In re Enron Corp., Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002)..................................................................................11

11

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ..................................................................................9

12

13

*Takeda v. Turbodyne Techs, Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..........................................................................9

14

15

**STATUTES, RULES AND REGULATIONS**

16

15 U.S.C.
  §1          ...............................................................................................................4, 5, 6
  §77k       .......................................................................................................................4
  §78j(b)......................................................................................................................3, 4
  §78t(a)......................................................................................................................3, 4
  §78u-4(a)............................................................................................................. *passim*

17

18

19

Federal Rules of Civil Procedure
  Rule 23 ..........................................................................................................3, 8, 9, 10
  Rule 23(a).......................................................................................................................1
  Rule 42(a).......................................................................................................................2

20

21

22

17 C.F.R.
  §240.10b-5 ...........................................................................................................3, 4, 10

23

24

**SECONDARY AUTHORITIES**

25

7 Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)
  §22.24 ...........................................................................................................................10

26

27

28

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW

1    PLEASE TAKE NOTICE that on January 3, 2005, at 9:00 a.m., or as soon thereafter as the

2  matter may be heard, in the Courtroom of the Honorable James Ware, United States District Court,

3  Northern District of California, 280 South First Street, San Jose, California 95113, Charter

4  Township of Clinton Police and Fire Retirement System, Mark and Karen Gurvey, and Central

5  Laborers' Pension Fund (collectively, the "Central Laborers' Group") will, and hereby does, move

6  this Court under §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C.

7  §78u-4(a)(3)(B), for its appointment as Lead Plaintiff in this action and to approve its selection of

8  the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as Lead

9  Counsel.

10    This motion is made on the grounds that the Central Laborers' Group is the "most adequate

11  plaintiff" pursuant to the Exchange Act.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In addition, the Central

12  Laborers' Group meets the requirements of Federal Rule of Civil Procedure 23(a) because its claims

13  are typical of the class members' claims and because it will fairly and adequately represent the class.

14  Further, the Central Laborers' Group has selected and retained counsel with vast experience in

15  prosecuting securities class actions, to serve as Lead Counsel.

16    This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities

17  in support thereof, the Declaration of John K. Grant in support thereof, the pleadings and files

18  herein, and such other written or oral argument as may be presented to the Court.

19    **MEMORANDUM OF POINTS AND AUTHORITIES**

20  **I.    INTRODUCTION**

21    Class members the Central Laborers' Group, who possesses a significant financial interest in

22  the outcome of this litigation as a result of its purchases of Infineon Technologies AG ("Infineon" or

23  the "Company") securities between March 13, 2000 and July 19, 2004 (the "Class Period"), submits

24  this memorandum of points and authorities in support of its motion, filed pursuant to §21D(a)(3)(B)

25  of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995

26

27

28

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW          - 1 -

1   ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), requesting its appointment as Lead Plaintiff and approval of

2   its selection of the law firm of Lerach Coughlin as Lead Counsel for the class.[1]

3          Section 21D(a)(3)(B) of the Exchange Act sets forth the procedure to select a lead plaintiff to

4   oversee class actions brought under the federal securities laws.  Specifically, §21D(a)(3)(A)(i)

5   provides that within 20 days after the date on which a class action is filed under the PSLRA:

6          [T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national

7          business-oriented publication or wire service, a notice advising members of the

8          purported plaintiff class –

9                 (I)     of the pendency of the action, the claims asserted therein, and the

10         purported class period; and

11                (II)    that, not later than 60 days after the date on which the notice is

12         published, any member of the purported class may move the court to serve as lead

13         plaintiff of the purported class.

14  15 U.S.C. §78u-4(a)(3)(A)(i).

15         Further, §21D of the Exchange Act, as amended by the PSLRA, directs this Court to consider

16  any motions to appoint lead plaintiff, filed in response to the required notice, no later than 90 days

17  after the date of publication or as soon as practicable after this Court decides any pending motion to

18  consolidate actions asserting substantially the same claims.[2]  15 U.S.C. §78u-4(a)(3)(B)(i)-(ii).

19

20  _____

21  [1]     The Central Laborers' Group has submitted signed, sworn certifications as required by
    §21D(a)(2)(A)(i)-(vi) of the Exchange Act.  *See* Ex. B to the Declaration of John K. Grant in
22  Support of Motion to Appoint Charter Township of Clinton Police and Fire Retirement System,
    Mark and Karen Gurvey, and Central Laborers' Pension Fund as Lead Plaintiff and to Approve Lead
23  Plaintiff's Selection of Lead Counsel ("Grant Decl."), filed concurrently herewith.  The PSLRA
    specifically authorizes any class member, regardless of whether that class member has filed a
24  complaint, to move for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

25  [2]     A total of five related actions have been filed against Infineon in this District.  Pursuant to
    Fed. R. Civ. P. 42(a), it is appropriate to consolidate these five related securities actions.  As a result,
26  the Central Laborers' Group has filed a motion to consolidate the related actions.  *See* Motion of
    Charter Township of Clinton Police and Fire Retirement System, Mark and Karen Gurvey, and
27  Central Laborers' Pension Fund to Consolidate Related Actions, filed concurrently herewith.

28

1    The Central Laborers' Group possesses a significant financial interest in the outcome of this

2  litigation as a result of its purchases of Infineon securities during the Class Period, and to its

3  knowledge has the most significant financial interest in the relief sought by the class.  *See* Grant

4  Decl., Exs. A-B.  This Court should therefore presume that the Central Laborers' Group is the most

5  adequate plaintiff in this class action.

6    Additionally, the Central Laborers' Group satisfies the requirements of Fed. R. Civ. P. 23.

7  Its claims are typical of the class and it will fairly and adequately represent the interests of the class

8  since its interests are closely aligned with the absent class members.

9    The Central Laborers' Group has also selected and retained Lerach Coughlin, counsel with

10  vast experience in prosecuting securities class actions, and who have already undertaken and are

11  continuing a thorough investigation of this case.  Consequently, the Central Laborers' Group is the

12  "most adequate plaintiff" and, accordingly, should be appointed as Lead Plaintiff, and this Court

13  should approve its selection of Lerach Coughlin as Lead Counsel as provided by the PSLRA.

14  **II.    SUMMARY OF PENDING ACTIONS**

15    Presently pending in this District are five federal securities fraud class action lawsuits (the

16  "Actions") relating to losses as a result of defendants' misconduct.[3]  The first of these complaints

17  was filed on September 30, 2004, and pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i), plaintiff in that

18  action caused to be published a notice to the purported class on September 30, 2004.  *See* Grant

19  Decl., Ex. C.  The Actions are brought on behalf of persons who purchased Infineon securities

20  during the Class Period.[4]  The Actions allege that defendants violated §§10(b) and 20(a) of the

21  Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the

22

23  [3]    These cases are: *James Dolan v. Infineon Technologies AG, et al.*, No. C-04-4156-JW (filed
    September 30, 2004); *Thomas Hadfield v. Infineon Technologies AG, et al.*, No. C-04-4189-JW
24  (filed October 4, 2004); *Graziella Peano v. Infineon Technologies AG, et al.*, No. C-04-4279-JW
    (filed October 8, 2004); *Rosenbaum Partners LP v. Infineon Technologies AG, et al.*, No. C-04-
25  4388-JW (filed October 18, 2004); and *Mark Vendittis v. Infineon Technologies AG, et al.*, No. C-
    04-4617-JW (filed November 1, 2004).
26
    [4]    The Actions allege slightly different class periods.  These differences will be resolved upon
27  the filing of a consolidated complaint.

28
    NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
    LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
    COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW          - 3 -

1  Securities and Exchange Commission ("SEC"), 17 C.F. R. §240.10b-5, by issuing a series of false

2  and misleading statements during the Class Period and/or failing to disclose adverse facts about the

3  Company's financial results and business operations.[5]  Lead plaintiff and lead counsel must be

4  appointed by the Court in this, and the related actions.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

5  **III.   STATEMENT OF FACTS**

6  These related class actions are brought against Infineon; Ulrich Schumacher, its former

7  Chairman, President and CEO; Peter Bauer, its Executive Vice President of Sales and Marketing;

8  and Peter J. Fischl, its Executive Vice President and Chief Financial Officer (collectively, the

9  "defendants") on behalf of investors who purchased or otherwise acquired Infineon publicly traded

10  securities during the Class Period.  ¶1.[6]  Plaintiffs allege that defendants violated §§10(b) and 20(a)

11

12  of the Exchange Act and SEC Rule 10b-5 and §§11 and 15 of the Securities Act by issuing a series

13  of materially false and misleading statements during the Class Period that affirmatively concealed

14  defendants' illegal price-fixing combination and conspiracy.  ¶¶1, 43, 63, 67, 69, 80.

15  Infineon manufactures and markets semiconductors used in a variety of microelectronic

16  applications.  ¶16.  The Company has operations, investments and customers located in Europe, Asia

17  and North America.  *Id.*  Infineon and other chipmakers produce "dynamic random access memory"

18  ("DRAM") products used in digital recorders, personal computers, printers, video recorders, mobile

19  phones and many other electronics.  ¶3.  Beginning by at least July 1, 1999 and continuing until at

20  least June 15, 2002, Infineon and certain co-conspirators entered into and engaged in a combination

21  and conspiracy both in the United States and elsewhere to suppress and eliminate competition by

22  fixing the prices of DRAM sold to certain original equipment manufacturers of personal computers

23

24

25  [5]  Two of the Actions also allege that defendants violated §§11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k and 77o.

26  [6]  Unless otherwise indicated, all paragraph references ("¶__" or "¶¶___") are to the complaint

27  in *Rosenbaum Partners LP v. Infineon Technolgies AG, et al.*, No. C-04-4388-JW, filed October 18, 2004.

28

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW          - 4 -

1    and servers in violation of §1 of the Sherman Act, 15 U.S.C. §1.  ¶¶3, 4, 18.  During that time,

2    defendants sought to and did fix, raise and maintain, or stabilize prices for computer memory

3    products in the United States.  ¶19.

4        Throughout the Class Period, defendants affirmatively and fraudulently concealed their

5    unlawful conduct from plaintiffs and the Class.  ¶22.  Defendants gave false and pretextual reasons

6    for DRAM prices during the Class Period and falsely claimed that the pricing was the result of

7    competitive factors rather than collusion.  ¶23.

8        On or about March 13, 2000, the first day of the Class Period, the Company filed its

9    Registration Statement/Prospectus for its $5.5 billion initial public offering ("IPO") announcing that

10   it was the fifth largest producer of DRAM in 1999 in terms of revenue, with a worldwide market

11   share of approximately 8%.  ¶25.  Infineon's shares more than doubled on the first trading day.  ¶27.

12   On April 27, 2000, Infineon announced record earnings and sales for 2Q00 and the first six months

13   of its 2000 financial year.  ¶28.  The Company continued to report record results for subsequent

14   quarters in FY00.  ¶¶32, 34.  Throughout this time, defendants told the public that the Company's

15   record earnings were the result of a rebound in memory-chip prices, high demand from the phone

16   industry, increased productivity and a focus on high margin products.  ¶¶29, 31, 32, 34.  While no

17   longer claiming record earnings, the Company announced strong 1Q01 and 2Q01 results despite a

18   volatile market environment.  ¶¶36, 37.  On November 13, 2001, the Company announced that its

19   earnings and revenues for FY01 were down and that the Company suffered an annual net loss of

20   € 591 million, which had resulted from a sharp decline in the overall semiconductor market.  ¶40.

21   On January 21, 2002, the Company announced further revenue declines in 1Q02, but also told

22   investors that there were first positive signs in demand for mobile communication products and

23   pricing for memory products.  ¶41.  In later quarters, Infineon announced higher revenues and

24   reduced net losses due to improved market environment especially for memory products.  ¶¶42, 44.

25   Around June 2002, Infineon stopped engaging in price-fixing and its financial results plummeted.

26   ¶¶3, 4, 18, 46.  Defendants, however, embarked on a plan to understate the Company's liabilities in

27   order to conceal their illegal conduct associated with the price-fixing scheme.  ¶43.  They

28

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW                    - 5 -

1   represented that Infineon's subsequent revenue and gross margin declines were mainly due to the

2   overall tough pricing environment, particularly the significant price decline for memory chips, as

3   well as the negative impact of the weakening U.S. dollar exchange rate. ¶¶44, 45, 48, 50.  Even in

4   quarters where the Company announced increases in revenues, the Company noted that its increased

5   productivity could not compensate for the dramatic price decline for memory products. ¶¶47, 49, 51.

6           On July 19, 2004, Infineon acknowledged the seriousness of a Justice Department

7   investigation into its price-fixing practice when it recorded a $190 million charge for the antitrust

8   investigation. ¶¶2, 52.  Then, on September 15, 2004, the *Associated Press* issued an article entitled

9   "German chipmaker Infineon admits price fixing" announcing that Infineon had agreed to plead

10  guilty to price fixing and will pay a $160 million fine, the third-largest fine imposed in a criminal

11  case by the Justice Department's antitrust division.  ¶¶3, 17, 23.  The article stated that Infineon

12  entered into a plea agreement, acknowledging that it had conspired with other companies to fix

13  prices of widely-used computer memory products between July 1999 and June 2002.  ¶¶3, 17.

14          By violating the antitrust laws and fixing prices, Infineon necessarily and also fraudulently

15  misled investors and misrepresented earnings and assets. ¶5, 58.  Defendants improperly accounted

16  for earnings artificially inflated by the price-fixing scheme in the Company's 1999-2002 financial

17  statements, such that its 1999-2002 financial statements were not a fair presentation of Infineon's

18  results and were presented in violation of Generally Accepted Accounting Principles ("GAAP") and

19  SEC rules.  ¶56.  As a result of the illegal antitrust activities, Infineon's shares traded at inflated

20  prices enabling the Company to make a $5.5 billion IPO and a $1 billion bond offering, together

21  with stock-for-stock acquisitions using the Company's inflated shares as currency.  ¶¶5, 33, 38, 39.

22  **IV.   ARGUMENT**

23          **A.   The Central Laborers' Group Satisfies All Three Requirements of
                    §21D(a)(3)(B) of the PSLRA and Should Be Appointed Lead Plaintiff**
24

25                  **1.   Notice Was Properly Published Under the PSLRA**

26          The PSLRA requires plaintiffs in securities class actions to promptly publish a notice

27  advising class members of the pendency of the action and of their right to move within 60 days of

28  publication of the notice to be appointed lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Where, like

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW               - 6 -

1   here, multiple actions are brought on behalf of a class asserting substantially the same claims, only

2   the plaintiff in the first-filed action must publish notice.  15 U.S.C. §78u-4(a)(3)(A)(ii).

3          On September 30, 2004, James Dolan, the plaintiff who first filed against Infineon, published

4   notice over *Business Wire*, a national business-oriented wire service.  Grant Decl., Ex. C.  That

5   notice advised class members of the existence of the securities class action lawsuit against Infineon,

6   the claims asserted therein, the Class Period and their right to move for lead plaintiff.  Thus, this

7   motion is timely filed within 60 days from the publication of that notice and 15 U.S.C. §78u-

8   4(a)(3)(A)(i) is satisfied.

9                    **2.      The Central Laborers' Group Possesses the Largest Overall**
                             **Financial Interest and Should Be Presumed Lead Plaintiff**
10

          No later than 60 days after the notice is published, any member or members of the class may
11
    move the court to serve as lead plaintiff of the class.  15 U.S.C. §78u-4(a)(3)(A)(i)(II).   The
12
    PSLRA's "most adequate plaintiff" provision provides that this Court
13
          shall appoint as lead plaintiff the member or members of the purported plaintiff class
14
          that the court determines to be most capable of adequately representing the interests
15
          of class members (hereafter in this paragraph referred to as the "most adequate
16
          plaintiff") in accordance with this subparagraph.
17
    15 U.S.C. §78u-4(a)(3)(B)(i).
18
          During the Class Period, the Central Laborers' Group purchased Infineon securities at prices
19
    inflated by defendants' materially false and misleading statements and as a result, possesses a
20
    significant financial interest in the outcome of this litigation.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).
21
          The PSLRA's "most adequate plaintiff" provision also requires this Court to adopt a
22
    rebuttable ***presumption*** that:
23
          [T]he most adequate plaintiff in any private action arising under this title is the person or
24
          group of persons that –
25
                                              *      *      *
26
                 (bb)     in the determination of the court, has the ***largest*** financial interest in the relief
27
                 sought by the class.
28
    NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
    LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
    COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW                      - 7 -

1   15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added). To the best of its knowledge, the Central

2   Laborers' Group has the largest *financial interest* in the relief sought in this case. *See* Chart of

3   Movants' Purchases and Losses, Grant Decl., Ex. A.

4          The Central Laborers' Group sustained losses of approximately $263,587.34 in connection

5   with its purchases of Infineon securities, purchased approximately 19,580 shares, and expended

6   approximately $608,931.23 in purchasing Infineon securities as a result of defendants'

7   misrepresentations and concealment. *See id*. To the Central Laborers' Group's knowledge, this

8   financial interest makes it the proposed lead plaintiff with the largest financial stake in this action – a

9   fact which warrants a presumption that it is the "most adequate plaintiff" in this case under §21D of

10  the Exchange Act. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("[T]he district court

11  must compare the financial stakes of the various plaintiffs and determine which one has the most to

12  gain from the lawsuit."). Consequently, this Court should presume that the Central Laborers' Group

13  is the most adequate plaintiff in this case.

14         Moreover, the Central Laborers' Group, an institutional investor, is precisely the type of lead

15  plaintiff Congress envisioned when it enacted the PSLRA in 1995. *See Cavanaugh*, 306 F.3d 726

16  (finding that PSLRA's purpose was to attract institutional investors); *Greebel v. FTP Software*, 939

17  F. Supp. 57, 63 (D. Mass. 1996) (noting PSLRA's intent that institutional investors be presumptively

18  appointed lead plaintiffs). The Central Laborers' Group has the expertise and the incentive to

19  represent the plaintiff class aggressively and intelligently, in the manner contemplated by Congress

20  when it passed the PSLRA. Consequently, this Court should presume that the Central Laborers'

21  Group is the most adequate plaintiff in this case.

22                    **3.      The Central Laborers' Group Meets the Requirements of Rule 23
                              of the Federal Rules of Civil Procedure**

23
           Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act provides that, in addition to possessing
24
    a significant financial interest in the relief sought by the class, the lead plaintiff must also "otherwise
25
    satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-
26
    4(a)(3)(B)(iii)(I)(cc).
27

28
    NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
    LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
    COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW                    - 8 -

1    With respect to the qualifications of class representatives, Rule 23(a) requires generally that

2 their claims be typical of the claims of the class and that the representatives will fairly and

3 adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23.  As detailed below, the Central

4 Laborers' Group satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to

5 be appointed lead plaintiff.[7]

6               **a.       The Central Laborers' Group's Claims Are Typical of the
                           Claims of the Class**

7    The typicality requirement of Rule 23(a)(3) is satisfied when representative plaintiffs' claims

8 arise out of the same event or course of conduct as do the other class members' claims, and are based

9 on the same legal theories.  *Takeda v. Turbodyne Techs, Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal.

10 1999); *In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346 (S.D. Cal. 1998).  The threshold

11 typicality and commonality requirements are not high.  Rule 23(a) requires only that resolution of

12 the common questions affect all or a substantial number of class members.  *Slaven v. BP Am., Inc.*,

13 190 F.R.D. 649, 657 (C.D. Cal. 2000).  The questions of law and fact common to the members of the

14 class which predominate over questions which may affect individual class members include the

15 following:

16       1.       whether the defendants' acts or omissions violated the federal securities laws;

17       2.       whether defendants omitted and/or misrepresented material facts;

18       3.       whether defendants knew, had reason to know or recklessly disregarded that their

19 statements were false and misleading;

20       4.       whether the price of Infineon securities was artificially affected during the Class

21 Period; and

22       5.       the extent of damage sustained by class members and the appropriate measure of

23 damages.

24

25 _____

26 [7]    Courts have recognized that this preliminary determination of Rule 23 qualification is for the
purpose of selecting lead plaintiff only.  *Cavanaugh*, 306 F.3d 726; *Gluck v. CellStar Corp.*, 976 F.
27 Supp. 542, 546 (N.D. Tex. 1997).

28

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW          - 9 -

1    There is a well-defined community of interest in the questions of law and fact involved in

2 this case, of which the Central Laborers' Group is a part.  The Central Laborers' Group, as well as

3 other members of the class, alleges that defendants violated the Exchange Act and SEC Rule 10b-5

4 by publicly disseminating materially false and misleading statements, as well as statements which

5 omitted material facts, about Infineon during the Class Period.  As a result of defendants' fraudulent

6 representations and omissions, the Central Laborers' Group, as well as all other members of the

7 class, purchased Infineon securities at artificially inflated prices and were damaged thereby.

8 Because the claims asserted by the Central Laborers' Group are premised on the same legal and

9 remedial theories and are based on the same types of alleged misrepresentations and omissions as the

10 class' claims, typicality is satisfied.  *See* 7 Herbert Newberg & Alba Conte, *Newberg on Class*

11 *Actions* §22.24, at 107-08 (4th ed. 2002) ("[t]he majority of class action decisions support the view

12 that when it is alleged that the same unlawful conduct was directed at or affected both the named

13 plaintiff and the class sought to be represented, the typicality requirement is met").

14              **b.      The Central Laborers' Group Will Fairly and Adequately
                          Represent the Interests of the Class**

15
16    The Central Laborers' Group's interests are clearly aligned with the members of the class and

17 there is no antagonism between its interests and those of the class members.  The Central Laborers'

18 Group has amply demonstrated its adequacy as a class representative by signing a sworn certification

19 affirming its willingness to serve as, and to assume the responsibilities of class representative.  Grant

20 Decl., Ex. B.

21    In addition, the Central Laborers' Group has selected counsel highly experienced in

22 prosecuting securities class actions to represent them.  *See Durrett v. John Deere Co.*, 150 F.R.D.

23 555, 558 (N.D. Tex. 1993) (declaring the adequacy of representation "inquiry necessarily

24 concentrates on the competence of class counsel").  Accordingly, the Central Laborers' Group, as

25 well as its counsel, satisfy the requirements of Rule 23 and all of the PSLRA's prerequisites for

26 appointment as lead plaintiff in this action, and should be appointed lead plaintiff pursuant to 15

27 U.S.C. §78u-4(a)(3)(B).

28

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL
LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD
COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW          - 10 -

**B.     This Court Should Approve the Central Laborers' Group 's Selection of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The court should not disturb lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).  *See Cavanaugh*, 306 F.3d at 732-33 n.11 ("the district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class").  The Central Laborers' Group has selected Lerach Coughlin as lead counsel for the class.

The Central Laborers' Group's chosen counsel possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors.  Grant Decl., Ex. D.; *see In re Enron Corp.*, *Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002) (appointing William S. Lerach, presently of Lerach Coughlin, as lead counsel and noting that the court found the submissions by the appointed lead counsel to "stand out in the breadth and depth of its research and insight").

Lerach Coughlin brings to this action a securities litigation team consisting of attorneys, investigators and forensic accountants who have repeatedly demonstrated their willingness to undertake the painstaking process of unraveling accounting irregularities and improper transactions, all of whom will devote substantial resources to the prosecution of this action.  *See* Grant Decl., Ex. D.

Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Lerach Coughlin.

NOT OF MOT AND MOT TO APPT CHARTER TOWNSHIP, GURVEY, AND CENTRAL LABORERS' AS LEAD PLTFF AND TO APPROVE LEAD PLTFF'S SELECTION OF LEAD COUNSEL; MEMO OF P'S AND A'S IN SUPPORT THEREOF - C-04-4156-JW                    - 11 -

IV.    CONCLUSION

For all the foregoing reasons, the Central Laborers' Group respectfully requests that the Court: (1) appoint it as Lead Plaintiff pursuant to §21D(a)(3)(B) of the Exchange Act; and (2) approve its selection of Lerach Coughlin as Lead Counsel for the class.

DATED: November 29, 2004                    Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN K. GRANT
SYLVIA SUM


                                                          /s/ John K. Grant
                                                         JOHN K. GRANT

                                            100 Pine Street, Suite 2600
                                            San Francisco, CA  94111
                                            Telephone:  415/288-4545
                                            415/288-4534 (fax)

                                            LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
                                            WILLIAM S. LERACH
                                            401 B Street, Suite 1700
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            [Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Infineon Techs\BRF00016033rev1_LP (CA).doc

1  DECLARATION OF SERVICE BY FACSIMILE and MAIL
PURSUANT TO NORTHERN DISTRICT LOCAL RULE 23-2(c)(2)

2

3      I, the undersigned, declare:

4      1.      That declarant is and was, at all times herein mentioned, a citizen of the United States

5 and resident of the City and County of San Diego, over the age of 18 years, and not a party to or

interest in the within action; that declarant's business address is 401 B Street, Suite 1700, San Diego,
6
CA  92101.
7
      2.      That on November 29, 2004, declarant served by facsimile and mail the **NOTICE OF**
8
**MOTION AND MOTION TO APPOINT CHARTER TOWNSHIP OF CLINTON POLICE**
9
**AND FIRE RETIREMENT SYSTEM, MARK AND KAREN GURVEY, AND CENTRAL**
10
**LABORERS' PENSION FUND AS LEAD PLAINTIFF AND TO APPROVE LEAD**
11
**PLAINTIFF'S SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINT** to the
12
parties listed on the attached Service List and this document was forwarded to the following
13
designated Internet site at:
14
http://securities.lerachlaw.com/
15
      3.      That there is a regular communication by facsimile between the place of origin and
16
the places so addressed.
17
      I declare under penalty of perjury that the foregoing is true and correct.  Executed on
18
November 29, 2004, at San Diego, California.
19

20                                          */s/ DIANA L. HOUCK*
                                            DIANA L. HOUCK
21

22

23

24

25

26

27

28

INFINEON TECHS (CA)

Service List - 11/29/2004   (04-0381)

Page 1 of  2

## Counsel For Defendant(s)

General  Counsel
Infineon Technologies North America Corp.
1730 North First Street
San Jose, CA  95112

## Counsel For Plaintiff(s)

Lionel Z. Glancy
Peter A. Binkow
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
   310/201-9150
   310/201-9160 (Fax)

Robert S. Green
Green Welling LLP
235 Pine Street, 15th Floor
San Francisco, CA  94104
   415/477-6700
   415/477-6710 (Fax)

Charles J. Piven
Law Offices of Charles J. Piven, P.A.
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, MD  21202
   410/332-0030
   410/685-1300 (Fax)

Marc S. Henzel
Law Offices of Marc S. Henzel
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA  19004
   610/660-8000
   610/660-8080 (Fax)

William S. Lerach
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
   619/231-1058
   619/231-7423 (Fax)

John K. Grant
Sylvia  Sum
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
   415/288-4545
   415/288-4534 (Fax)

INFINEON TECHS (CA)

Service List - 11/29/2004   (04-0381)

Page 2 of  2

Marc A. Topaz
Richard A. Maniskas
Tamara  Skivirsky
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
   610/667-7706
   610/667-7056 (Fax)

Robert I. Harwood
Jeffrey M. Norton
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY  10022
   212/935-7400
   212/753-3630 (Fax)