IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re INFINEON TECHNOLOGIES AG SECURITIES LITIGATION, _____/ | NO. C 04-04156 JW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; ORDER RESCHEDULING CASE MANAGEMENT CONFERENCE** |

## I. INTRODUCTION

This is a securities fraud class action suit brought on behalf of investors who acquired Infineon Technologies AG ("Infineon") securities between March 13, 2000 and July 19, 2004 (the "Class Period"), including investors in Infineon's $5.5 billion initial public offering ("IPO"). The action arises under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j and 78t(a) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §§240.10b-5.

Infineon is one of the world's largest manufacturers of Dynamic Random Access Memory ("DRAM"), a type of computer memory. In September of 2004, Infineon pled guilty to participating in a criminal conspiracy to fix the prices of DRAM to be sold to certain OEM customers from approximately July 1, 1999 to June 15, 2002. Also, in November and December of 2004, four executive officers of Infineon and Infineon Technologies North America Corporation ("Infineon North America") pled guilty to violating federal antitrust laws. In essence, Plaintiffs allege that the illegal price fixing fraudulently inflated Infineon's securities prices and injured investors because

DRAM sales prices have a direct impact on the trading prices of Infineon's securities. Consolidated Amended Complaint ("Complaint") at 1:20-22. Plaintiffs also allege that Defendants made forty-five statements that were rendered false and misleading because they failed to disclose the price-fixing. Plaintiffs assert two claims: violation of section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and control person liability pursuant to section 20(a) of the Exchange Act.

Presently before the Court are two separate motions to dismiss the Complaint: (1) Defendants Heinrich Florian and T. Rudd Corwin's motion to dismiss; and (2) Defendants Infineon and Infineon North America, Ulrich Schumacher and Peter J. Fischl's motion to dismiss. The motions were noticed for hearing on January 23, 2006. The Court found it appropriate to take the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). Based upon all papers filed to date, the Court grants the motions to dismiss in part and denys the motions to dismiss in part with leave to amend.

## II. BACKGROUND

Defendant Infineon is a German corporation headquartered in Munich. Its securities are traded on both the Frankfurt Stock Exchange and as American Depository Shares ("ADS") on the New York Stock Exchange. Infineon designs, develops, manufactures, and markets a broad range of semiconductor memory products. Defendant Infineon North America is a wholly owned subsidiary of Infineon, and is a Delaware corporation based in San Jose that sells and markets Infineon products in the United States.

Ulrich Schumacher and Peter J. Fischl (the "Officer Defendants") were both officers of Infineon during the Class Period. Dr. Schumacher was Infineon's President and CEO and the Chairman of its Management Board. Peter J. Fischl was, and still is, Infineon's Executive Vice President and CFO.

Defendants T. Rudd Corwin, Heinrich Florian, Gunter Hefner and Peter Schaefer (the "Employee Defendants") were employees of Infineon or Infineon North America at various times between 1999 and 2002. The Employee Defendants held a variety of positions related to sales,

2

marketing, customer service, and/or logistics for memory products.

Infineon's most important products are computer memory chips known as DRAM. Plaintiffs allege that Infineon's DRAM division accounts for about 40% of Infineon's revenues and 70% of Infineon's earnings before interest and taxes ("EBIT"). Complaint, ¶¶4, 32. DRAM is sold in two different markets: (1) a contract market, where DRAM manufacturers sell a specific number of chips to a specific buyer, usually an Original Equipment Manufacturer ("OEM"); and (2) a spot market, where manufacturers sell DRAM to a wide range of buyers at fluctuating prices, usually in smaller quantities than sold under contract. See Hyundai Elecs. Co., Ltd. v. U.S., 53 F.Supp.2d 1334, 1349 (C.I.T. 1999). Contract market prices for DRAM trail the spot market prices by approximately three months. Complaint, ¶76.

On June 19, 2002, Infineon publicly disclosed that it had been subpoenaed by the United States Department of Justice ("DOJ") to provide information to a grand jury investigating possible antitrust violations in the DRAM industry. Complaint, ¶74. The price of Infineon stock dropped from $15.78 on June 18 to $14.91 on June 19.

In April of 2003, the European Commission began to investigate antitrust practices in the European DRAM markets. Complaint, ¶86. In November of 2003, Infineon announced that it had established an accrual of €28 million due to the investigation.

In February of 2004, the United States Federal Trade Commission ("FTC") issued an Initial Decision in which it made reference to an e-mail dated November 21, 2001, composed by Kathy Redford, an employee of Micron Technology, Inc., an Infineon competitor, that "described the efforts of Infineon and Samsung to raise [DRAM] prices, and stated that Micron intended to try to raise its prices to all of the OEM customers." Appendix to Complaint, Ex. I. The e-mail allegedly stated, "the consensus from all suppliers is that if Micron makes the move, all of them will do the same and make it stick." Plaintiffs rely upon this e-mail to support their securities fraud claims.

On July 20, 2004, Infineon announced that it was raising the amount of its accrual for this investigation and related civil proceedings. Id. at ¶¶79, 86. The next day, Infineon's stock price

3

dropped from $12 to $11.68 per ADS.

On September 15, 2004, Infineon announced that it had entered into a plea agreement in connection with the DOJ's investigation into DRAM price-fixing. Id. at ¶¶24, 87. Infineon's stock dropped $0.21per ADS, to close at $10.07 per ADS. Infineon and four executives who worked for Infineon or its subsidiary also entered in plea agreements, pled guilty and were sentenced for criminal price-fixing of DRAM during the Class Period. The sentences included the imposition of a $160 million criminal fine on Infineon and incarceration of four Infineon and Infineon North America executives.

According to the plea agreement between the Department of Justice and Infineon, the price-fixing occurred from July 1, 1999 to June 15, 2002, and directly affected six companies in the United States: Dell Inc., Hewlett-Packard Company, Compaq Computer Corporation, International Business Machines Corporation, Apple Computer Inc., and Gateway, Inc. Plaintiffs allege that by manipulating DRAM prices, Defendants inflated Infineon securities prices.

In addition to asserting liability for manipulating Infineon securities prices by engaging in an illegal price-fixing conspiracy, Plaintiffs also allege that Defendants are liable for making forty-five false statements during the Class Period. More specifically, Defendants allegedly issued false and misleading statements regarding financial results. The statements were allegedly false and misleading because they failed to disclose that Infineon had achieved the reported financial results by engaging in an illegal, criminal conspiracy to fix DRAM prices in violation of federal antitrust laws. Complaint, False Statement Numbers 1, 11, 13, 16, 17, 19, 23, 24, 25, 28, 35, 36, 40, 41, 42, 43, 44, and 45.

Plaintiffs also identify a series of statements describing Infineon's business, its competition, market growth, product demand, profit forecasts, and other similar subjects that were allegedly false and misleading because they failed to disclose that Infineon had achieved the reported financial results by engaging in an illegal, criminal conspiracy to fix DRAM prices in violation of federal antitrust laws. Complaint, False Statement Numbers 2, 3, 4, 8, 9, 10, 12, 14, 15, 26, 29, 38, and 39.

4

For example, Defendants issued a Prospectus on March 13, 2000 that allegedly falsely and misleadingly "assured investors that Infineon was competing on a proper legal basis with other DRAM manufacturers, when in fact it was engaged in an illegal, criminal conspiracy with other DRAM manufacturers to fix DRAM prices in violation of federal antitrust laws." Complaint, at 17:10-13.

Plaintiffs further identify numerous statements specifically about the price for DRAM chips that were allegedly false and misleading because, once again, the statements failed to disclose that DRAM prices were the result of an illegal, criminal conspiracy to fix DRAM prices in violation of federal antitrust laws. Complaint, False Statement Numbers 5, 6, 7, 18, 20, 21, 22, 27, 30, 31, 32, 33, 34, and 37.

Plaintiffs' allegations regarding scienter for each and every one of the forty-five allegedly false and misleading statements are as follows:

> . . . scienter is demonstrated by the fact that on September 14, 2004, Infineon as well as four executives of Infineon and Infineon North America, pled guilty to criminally manipulating DRAM prices. The plea agreements describe the executives' affirmative conduct in engaging in and authorizing illegal conduct. With respect to individual defendants who were not prosecuted and did not enter into plea agreements, scienter is inferred because DRAM provided as much as 70% or more of Infineon's EBIT earnings and the illegal conduct lasted for approximately three years, demonstrating that the illegal price-fixing scheme was highly pervasive. Because of their positions or their actual involvement in the scheme, each defendant knew or was deliberately reckless in not knowing that the statement above was false and misleading when made. Plaintiffs' allegations of scienter are based on: (1) the guilty pleas by Infineon and four executives of Infineon or Infineon North America admitting to and describing the conspiracy to suppress and eliminate competition by fixing the prices of DRAM from on or about July 1, 1999 to on or about June 15, 2002 and the associated sentencing memoranda: (2) the November 21, 2001 Kathy Radford e-mail describing Infineon's participation in a price-fixing scheme; (3) Infineon's reported financial results identifying the contribution of DRAM sales to Infineon's revenues and earnings.

See e.g. Complaint, ¶37(d), at p.16:11-26. Plaintiffs further allege that Defendants had the motive and opportunity to commit securities fraud. Id. at ¶97, p.76. More specifically, Plaintiffs allege that Infineon used the inflated stock as acquisition currency, and acquired parts of Ericsson Microelectronics, Ardent Technologies, Inc., and Catamaran Communications Inc. Plaintiffs also

completed a secondary offering in July 2001 with net proceeds of €1.48 billion, and allegedly intended to use the money to fund future capital expenditures and potential acquisitions as well as for working capital and other corporate purposes.

Pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P., Defendants Infineon, Infineon North America, and the two Officer Defendants move to dismiss the Complaint for numerous reasons. First, they contend that Plaintiffs fail to allege particularized facts establishing that any alleged statement was materially misleading. Second, they contend that Plaintiffs fail to allege scienter because the facts do not support a strong inference that any Defendants made any statement with knowledge or deliberate recklessness as to its false or materially misleading nature; and there are no facts showing that any Defendant who made, or substantially participated in the making of a statement, was even aware of the price-fixing activity at the time the statement was made. Third, they contend that the allegations of price-fixing are insufficient to demonstrate that any Defendant performed, with scienter, acts designed to manipulate the price of Infineon securities. Fourth, they contend that Plaintiffs fail to plead facts demonstrating that their losses were caused by the allegedly misleading statements or market manipulation.

The two Employee Defendants, Florian and Corwin, also move to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P. The Employee Defendants contend that the Complaint is deficient insofar as it lacks any allegation that they made or participated in the making of the allegedly false or misleading statements; lacks any allegation that they had any job responsibilities or involvement in the making of the public statements; lacks any allegation that their conduct was designed to affect stock prices; lacks any particularized allegation that they participated in, or even were aware of, any alleged scheme to defraud investors or manipulate stock prices; and lacks allegations creating a strong inference that they intentionally or recklessly defrauded investors. Defendants Florian and Corwin also join in their co-defendants' motion to dismiss.

### III.  STANDARDS

A court may dismiss a complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., for pleading "insufficient facts under a cognizable legal theory." Robertson v. Dean Witter Reynolds, Co., 749 F.2d 530, 534 (9th Cir. 1984).  When deciding a motion to dismiss a complaint under Rule 12(b)(6), the court takes all material allegations in the complaint as true and construes these material allegations in the light most favorable to the non-moving party.  Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, the Court will not accept wholly conclusory allegations.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), cert. denied, 454 U.S. 1031 (1981); Kennedy v. H & M Landing, Inc., 529 F.2d 987, 989 (9th Cir. 1976).

Claims brought under section 10(b) and Rule 10b-5 must meet the particularity requirements of Federal Rule of Civil Procedure Rule 9(b).  In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1014 (9th Cir. 2005).  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Moreover, claims brought under section 10(b) and Rule 10b-5 must also meet the stringent pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

To plead a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, a plaintiff must allege (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005).  The PSLRA imposes heightened pleading requirements in private securities fraud litigation by amending the 1934 Exchange Act to require that a complaint "plead with particularity both falsity and scienter." In re Daou, 411 F.3d at 1014.  Following the PSLRA, a complaint alleging securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on

7

which that belief is formed." 15 U.S.C. § 78u-4(b)(1); <u>In re Vantive Corp. Sec. Litig.</u>, 283 F.3d 1079, 1985 (9th Cir. 2002). Private securities fraud plaintiffs must also "state with particularity all facts which give rise to a strong inference that the defendant acted with the required state of mind," which is "intentionally or with deliberate recklessness." 15 U.S.C. § 78 u-5(b)(2); <u>In re Silicon Graphics Sec. Litig.</u>, 183 F.3d 970, 974 (9th Cir. 1999) (facts must come closer to demonstrating intent as opposed to mere motive and opportunity); <u>Ronconi v. Larkin</u>, 253 F.3d 423, 429 (9th Cir. 2001). A court in a private securities fraud "must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs" to determine "whether, on balance, the plaintiffs' complaint gives rise to the requisite inference of scienter." <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 897 (9th Cir. 2002); <u>Lipton v. PathoGenesis Corp.</u>, 284 F.3d 1027, 1038 (9th Cir. 2002).

## IV. DISCUSSION

1. <u>Plaintiffs Have Alleged Sufficient Facts to Establish That Statements Made to the Investing Public about Infineon's Financial Condition During the Operation of the Price Fixing Conspiracy were Materially Misleading.</u>

Plaintiffs rely primarily upon the antitrust plea agreements to establish that the forty-five statements issued during the Class Period were materially misleading. To a lesser extent, they rely upon the November 21, 2001 e-mail composed by Kathy Redford; the movement of DRAM prices during the Class Period; and the movement of Infineon securities prices relative to NASDAQ. Each of these are discussed below. As set out below, based on the guilty pleas, the Court finds that the Complaint is pled with sufficient specificity against the corporate Defendants and the Officer Defendants.

2. <u>The Antitrust Pleas.</u>

Plaintiffs allege that the forty-five statements set forth in the Complaint were materially misleading because the statements did not disclose the DRAM price-fixing activity.

a. <u>Statements re Revenues, Earnings and the Price of DRAMS</u>

Plaintiffs allege that Infineon's historical financial information was false and misleading

8

1  because it omitted information concerning the price-fixing conspiracy. Plaintiffs reason that "[t]he
2  historical results were due in part to prices set not by market forces, but rather by collusion," and
3  that "a reasonable investor could only understand these results to be indicative of a company's
4  performance in a free competitive environment and not a rigged game." Plaintiff's Opposition to
5  Defendants' Motion to Dismiss Consolidated Complaint at 10:5-8. In other words, Plaintiffs' theory
6  is that the statements about historical financial information were misleading because a reasonable
7  investor would infer that the stated financial results "were the product of Infineon's business acumen
8  and performance rather than collusive behavior with competitors." Id. at 10:20-23.

9        The Court accepts as true for purposes of this motion that the antitrust violation manipulated
10 the price and consequently revenue for a product which formed the core of Infineon's business such
11 that in the absence of the price-fixing activity Infineon's revenues or earnings, or overall prices of
12 DRAM would have been different, and indeed materially different. The Court denies the motion to
13 dismiss as to the corporate Defendants and the Officer Defendants as to all statements regarding
14 revenue, earnings and price and allows the case to proceed on the basis of those statements against
15 any Defendant .

16       b. Statements Regarding Competition

17       Plaintiffs allege that Defendants made false and misleading statements about the "intense"
18 and "significant" competition that Infineon faced. The antitrust pleas recite that the price-fixing
19 activity affected six OEM customers with varying levels of effectiveness. This admission supports
20 an inference that the statements about competition in the entire semiconductor industry were
21 materially false and misleading. Therefore, the motion to dismiss the Complaint as to the corporate
22 Defendants and the Officer Defendants is denied as to all statements regarding competition.

23       c.  Statements Regarding Projections

24       Plaintiffs' Complaint includes statements regarding projected financial results and DRAM
25 prices, which Plaintiffs allege were false and misleading because they did not disclose the price-
26 fixing. For example, Plaintiffs allege that on May 30, 2000, Schumacher stated that chip prices were

9

1  "remaining stable" and the third quarter's financial results "were unlikely to be any worse than the
2  second quarter." Complaint, ¶43. As another example, Plaintiffs allege that on May 14, 2001,
3  Schumacher stated that once demand picks up, prices for memory chips "could jump 20 per cent or
4  more." Id. at ¶57.

If Plaintiffs prove that these statements were made by a Defendant during the Defendant's participation in a price-fixing conspiracy there would be a basis for a jury to find that the statement are materially false and misleading. Therefore, the Court will deny the motion to dismiss claims as to the corporate Defendants and the Officer Defendants based upon alleged misrepresentations regarding projections.

3.  **The allegations with respect to statements based on the Redford E-mail Fail to Provide a Factual Basis for Establishing That Any Statement was Materially Misleading and was made by a Defendant.**

Plaintiffs allege that the statements set forth in the Complaint were materially misleading based upon an e-mail dated November 21, 2001, composed by Kathy Redford, an employee of Micron Technology, Inc., one of Infineon's competitors. The e-mail is referenced in an Initial Decision issued by the United States Federal Trade Commission ("FTC") on February 23, 2004. According to the FTC Decision, Redford's e-mail "described the efforts of Infineon and Samsung to raise [DRAM] prices, and stated that Micron intended to try to raise its prices to all of the OEM customers." Appendix to Complaint, Ex. I. The e-mail allegedly stated, "the consensus from all suppliers is that if Micron makes the move, all of them will do the same and make it stick." The e-mail, however, lacks any reference to Infineon, its financial results, DRAM prices, projections, or competitiveness. Furthermore, the Complaint contains no facts to link the e-mail to anyone at Infineon. Therefore, the e-mail is wholly inadequate to establish materiality.

4.  **There are insufficient allegations with respect to Defendants Florian and Corwin.**

With respect to Defendants, Florian and Corwin, the Court finds that the Complaint is deficient in particularized facts upon which to base individual liability. The motion of Defendants Florian and Corwin is granted with 30 days leave to amend.

## V. CONCLUSION

Defendants Heinrich Florian and T. Rudd Corwin's motion to dismiss is GRANTED. If Plaintiffs wish to file an amended complaint with respect to those Defendants, Plaintiffs must do so on or before June 12, 2006. With respect to the motion to dismiss by Defendants Infineon and Infineon North America, Ulrich Schumacher and Peter J. Fischl, the Court finds that the Complaint alleges with sufficient particularity facts which, if proved, state a claim with respect to the statements identified in this Order. Therefore, as to those statements the Motion to Dismiss is DENIED. As to the remaining statements, the Motion to Dismiss is GRANTED and the non-actionable statements are ordered stricken from the Complaint. The revised complaint shall be filed on or before June 12, 2006.

The case management conference scheduled for May 22, 2006 is continued to June 26, 2006. The parties shall file a joint case management statement no later than June 16, 2006. Based on the joint statement and the state of the pleadings, the Court will notify the parties whether they need not appear at the conference. Otherwise, the Court orders trial counsel for all parties to appear at the June 16, case management conference.

Date: May 15, 2006

04cv415dismiss

JAMES WARE
United States District Judge

1 **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 Darren J. Robbins e_file_sd@lerachlaw.com
John K. Grant johnkg@lerachlaw.com
3 Mia A. Mazza mmazza@mofo.com
Patrick J. Coughlin patc@lerachlaw.com
4 William S. Lerach billl@lerachlaw.com

6 **Dated: May 16, 2006**                    **Richard W. Wieking, Clerk**

                                  **By:__/s/JW Chambers_____**
                                     **Melissa Peralta**
                                     **Courtroom Deputy**