1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re Infineon Technologies AG Securities Litigation | NO. C 04-04156 JW |

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFFS' MOTION FOR JOINDER; GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.  INTRODUCTION

Plaintiffs[1] bring this putative class action against Infineon Technologies AG ("Infineon") and certain Infineon officers and directors[2] (collectively, "Defendants"), alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5.  Plaintiffs allege Defendants engaged in securities fraud, by participating in an illegal price-fixing conspiracy involving Dynamic Random Access Memory ("DRAM"), and then manipulating the price of Infineon stock by making misrepresentations about the impact of the artificially inflated DRAM prices on Infineon's corporate value.

---

[1]  Named Plaintiffs are Reinhard Schroeder, Graziella Peano, and Charter Township of Clinton Police and Fire Retirement System.  (Third Amended Complaint for Violation of the Federal Securities Laws ¶ 11, hereafter, "TAC," Docket Item No. 159.)

[2]  Defendants are Infineon, Infineon North America ("Infineon NA"), Ulrich Schumacher ("Schumacher"), and Peter J Fischl ("Fischl").  (TAC ¶¶ 13-16.)

United States District Court

For the Northern District of California

1   Presently before the Court are Plaintiffs' Motion for Class Certification[3] and Defendants'

2   Motion for Judgment on the Pleadings.[4]  The Court conducted a hearing on January 9, 2009.  Based

3   on the papers submitted to date and oral argument, the Court GRANTS Plaintiffs' Motion for Class

4   Certification, GRANTS Plaintiffs' and Intervenor's Motion for Joinder, and DENIES Defendants'

5   Motion for Partial Summary Judgment.

6   **II.  BACKGROUND**

7   A detailed outline of the facts and allegations in this case may be found in the Court's prior

8   Orders.[5]  The Court reviews the relevant procedural history for the purposes of these motions.

9   This action was first filed on September 30, 2004.  (Docket Item No. 1.)  On May 22, 2006,

10  the Court granted in part and denied in part Defendants' motions to dismiss the Complaint with

11  leave to amend.  (May 22, 2006 Order, Docket Item No. 90.)  On July 17, 2007, Plaintiffs filed a

12  Third Amended Complaint, alleging three causes of action: (1) Violation of §10(b) of the Exchange

13  Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, against all Defendants for issuing

14  false or misleading statements about revenue, earnings, DRAM prices, and competition; (2)

15  Violation of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against all Defendants for control

16  person liability; and (3) Violation of § 20A of the Exchange Act, 15 U.S.C. § 78t-1, for alleged

17  contemporaneous insider trading.  (See TAC.)  On January 25, 2008, the Court dismissed Plaintiffs'

18

19      [3] (hereafter, "Class Motion," Docket Item No. 237.)  Also before the Court is Plaintiffs' and
20  Intervenor's Motion to Intervene Lawrence D. Sheriff as an Additional Named Plaintiff.  (hereafter,
    "Intervenor Motion," Docket Item No. 250.)

21      [4] (Defendants' Motion for Judgment on the Pleadings as to Reinhard Schroeder and All
    Other "Foreign Purchasers" or, in the Alternative, to Dismiss for Lack of Subject Matter
22  Jurisdiction, hereafter, "MJP," Docket Item No. 235.)
        Although Defendants have brought this as a motion under Fed. R. Civ. P. 12(c), the Court
23  converts it into a Fed. R. Civ. P. 56 motion for partial summary in order to examine certain evidence
    presented to the Court for its analysis.  Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697
24  F.2d 1297, 1301 (9th Cir. 1982) (the court may look at matters outside the pleadings in a motion for
    judgment on the pleadings, so long as the court treats the motion as one for summary judgment.)
25
        [5] (See August 13, 2008 Order Denying Defendants' Motion for Summary Judgment,
26  hereafter, "August 13 Order," Docket Item No. 234; January 25, 2008 Order Granting in Part and
    Denying in Part Defendants' Motions to Dismiss, hereafter, "January 25 Order," Docket Item No.
27  199.)

28                                              2

§ 20A claim against all Defendants and Plaintiffs' claims against Defendants Heinrich Florian and T. Rudd Corwin with prejudice.  (See January 25 Order.)  On August 13, 2008, the Court denied Defendants' motion for summary judgment.  (See August 13 Oder.)

Presently before the Court are Defendants' Motion for Partial Summary Judgment, Plaintiffs' Motion for Class Certification, and Plaintiffs' and Intervenor's Motion for Joinder.

### III.  STANDARDS

**A.      Motion for Partial Summary Judgment**

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment."  As with a motion under Rule 56(c), partial summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact."  Id. at 323.  The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

When evaluating a motion for partial or full summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded.  See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.

3

1   T.W. Elec. Serv., 809 F.2d at 631.  In such a case, partial summary judgment is inappropriate.

2   Anderson, 477 U.S. at 248.  However, where a rational trier of fact could not find for the non-

3   moving party based on the record as a whole, there is no "genuine issue for trial."  Matsushita Elec.

4   Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

5   **B.    Class Certification**

6          The decision to certify a class is committed to the discretion of the district court within the

7   guidelines of Federal Rule of Civil Procedure 23.  See Fed. R. Civ. P. 23; Doninger v. Pacific

8   Northwest Bell, Inc., 564 F.3d 1304, 1309 (9th Cir. 1977).  The party seeking class certification

9   bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one

10  requirement of Rule 23(b) have been met.  Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir.

11  2007) (citing Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001),

12  amended, 273 F.3d 1266 (9th Cir. 2001)).  A district court may certify a class only if, after "rigorous

13  analysis," it determines that the party seeking certification has met its burden.  General Telephone

14  Co. of the Southwest v. Falcon, 457 U.S. 147, 158-61 (1982).

15         In reviewing a motion for class certification, the court generally is bound to take the

16  substantive allegations of the complaint as true.  In re Coordinated Pretrial Proceedings in Petroleum

17  Products Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d

18  891, 901 (9th Cir. 1975)).  However, the court may look beyond the pleadings to determine whether

19  the requirements of Rule 23 have been met.  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th

20  Cir. 1992) (citation omitted).  In fact, "courts are not only at liberty to but must consider evidence

21  which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence

22  may also relate to the underlying merits of the case."  Dukes, 509 F.3d at 1178 n.2 (internal

23  quotations and citation omitted).

24  //

25

26

27

28                                                         4

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV.  DISCUSSION

**A.** **Defendants' Motion for Partial Summary Judgment**

Defendants move for partial summary judgment on the ground that the federal securities laws do not apply to the claims of "Foreign Purchasers," who are "(1) residents and citizens of countries other than the U.S., and (2) purchased Infineon AG common stock on the Frankfurt Stock Exchange."[6]  (MJP at 5.)

The securities laws of the United States apply where there is "some degree of connection between the [securities] fraud and conduct in, or effects on, the United States."  Grunenthal GmbH v. Hotz, 712 F.2d 421, 424 (9th Cir. 1983).  For conduct in the United States to act as a predicate for application of the securities laws, the conduct must be "significant with respect to the alleged violation" and further the fraudulent scheme.  Id.  (adopting the Eighth Circuit's test in Continental Grain (Australia) Pty. Ltc. v. Pacific Oilseeds, Inc., 592 F.2d 409, 420 (8th Cir. 1979)).  The domestic conduct cannot be "merely preparatory" to the securities fraud, but must be material in the sense that it directly caused the plaintiff's losses.  Id.  At the very least, jurisdiction in transnational securities cases is appropriate "where at least some activity designed to further the fraudulent scheme occurs within [the United States]."  Id. (citing SEC v. Kasser, 548 F.2d 109, 114 (3d Cir. 1977), cert denied, 431 U.S. 938 (1977)).

According to the Ninth Circuit in Grunenthal, the fact that the "jurisdictional hook need not be large to fish for securities law violations" is consistent with the "established objectives of the federal securities laws."  Id.  First, limiting application of domestic securities laws in cases involving transnational securities transactions "might encourage those who wish to defraud foreign securities purchasers or sellers to use the United States as a base of operations and, in effect, create a haven for such defrauders and manipulators."  Id. at 424-25.  Second, and more generally, this rule facilitates a

---

[6]  Defendants expressly do not move for judgment on the pleadings with respect to claims of "U.S. Purchasers," which Defendants define as "proposed class members who either: (1) are United States citizens or residents, or (2) purchased Infineon AG ADSs on the New York Stock Exchange." (MJP at 5 n.5.)

common purpose of the federal securities laws, which is "to achieve a high standard of business ethics in the securities industry." Id. at 425.

In this case, Defendants contend that Plaintiffs allege neither effects nor conduct in the United States, with respect to the Foreign Purchasers, sufficient to state a securities claim under the Ninth Circuit's standard in Grunenthal.  (MJP at 6.)

### 1.    Conduct in the United States

Plaintiffs' Complaint alleges several instances of Defendants' conduct in the United States. The issue is whether this conduct is sufficient to meet the standard articulated by the Ninth Circuit in Grunenthal for application of the federal securities laws.

First, the Complaint alleges that the artificially inflated prices that resulted from Defendants' admitted domestic DRAM price manipulation was a major contributor to Defendants' ability to fraudulently inflate Infineon AG's stock price.  (Plaintiffs' Opposition to Motion for Judgment on the Pleadings at 7, hereafter, "Opposition to MJP," Docket Item No. 261; TAC ¶¶ 28, 31-32, 64.)  In relevant part, the Complaint alleges:

> Deceptive and misleading DRAM prices were publicly circulated to investors and analysts in the United States.  (TAC ¶ 64.)  The publication failed to disclose that the reported DRAM prices were the result of an illegal price-fixing conspiracy.  (Id.)  Infineon investors purchased securities at prices that were inflated after the publication of misleading DRAM prices, and suffered losses as Infineon's stock declined as a result of the collapse of the price-fixing conspiracy.  (Id.)

The conduct alleged above involved the domestic dissemination of DRAM price information that was artificially inflated by Defendants' participation in an antitrust conspiracy.  According to this allegation, Defendants' distribution of this DRAM price data throughout the market, including in the United States, ultimately impacted the stock price of Infineon AG to the detriment of its investors. Such conduct, therefore, "furthered the fraudulent scheme" at issue in this case.  Grunenthal, 712 F.2d at 424.

Second, Plaintiffs have evidence that the CEO of Infineon AG, Individual Defendant Schumacher, made three allegedly fraudulent statements in the United States concerning DRAM prices.  (Opposition to MJP at 8.)  In all three instances, Schumacher was interviewed in New York,

and commented on DRAM prices.  On March 14, 2000, Schumacher gave an interview to CNBC's Market Watch, in which he stated that the "DRAM market picked up price-wise in the last quarter."[7] On November 16, 2000, in another CNBC interview, Schumacher stated that "distortion in the inventory levels has driven the prices down.  But we expect that to recover pretty soon, most likely in the next quarter." (Id., Ex. B.)  Finally, on May 8, 2001, in a third CNBC interview, Schumacher declared that "inventory levels in the industry are very low . . . which normally is the indicator that in the next quarter the prices go up again." (Id., Ex. C.)  Schumacher's statements, made in the United States to an investor-related media outlet, are further examples of domestic conduct, along with other evidence, could be sufficient to support application of the federal securities laws to the claims of the Foreign Purchaser Plaintiffs.

Third, Plaintiffs' Complaint alleges that Defendants made numerous SEC filings in the United States, each of which contained material misrepresentations.  (TAC ¶¶ 65-66, 97, 90-91.)  In each case, the Complaint states that the relevant SEC filing was "[f]iled with the SEC by Infineon, made by Infineon's senior officers, including Zitzewitz and signed by Schumacher and Fischl." (See id.)  Defendants contend, however, that these SEC filings were prepared in Germany, and thus cannot operate as the basis for jurisdiction over the Foreign Purchaser Plaintiffs' claims.  (MJP at 8-10.)  However, the Ninth Circuit has found that conduct as minimal as fraudulently signing a document in the United States can act as a jurisdictional hook for fraud arising out of otherwise entirely transnational securities sales.  Grunenthal, 712 F.2d at 425.  Given that federal securities law places great importance on the SEC filings of publicly traded corporations, and given the fact that such filings are relied on by investors, filing such documents in the United States is just as critical in perpetrating a market-wide fraud as the document signing event was to the fraud alleged in Grunenthal.  Accordingly, even if the SEC filings were prepared in Germany, the Court is persuaded that "the situs of preparations for SEC filings should not be determinative of jurisdiction questions

---

[7] (Declaration of John K. Grant in Support of Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings, Ex. A, hereafter, "Grant Decl.," Docket Item No. 262.)

United States District Court

For the Northern District of California

[because] the protections afforded by the [securities laws could] be circumvented simply by preparing SEC filings outside of the United States." Itoba Ltd. v. LEP Group PLC, 54 F.3d 118, 124 (2d Cir. 1995).

Defendants contends that courts have not literally followed Itoba, and have found that under certain circumstances, whether a SEC filing has "emanated from a foreign source" may limit extension of jurisdiction over a class of largely foreign Plaintiffs. See, e.g., In re Bayer AG Sec. Litig., 423 F. Supp. 2d 105, 112 (S.D.N.Y. 2005). Nonetheless, Defendants have not cited any controlling Ninth Circuit authority suggesting that extraterritorially prepared SEC filings cannot operate as conduct sufficient to permit the claims at issue in this case. Furthermore, even if the Court were to find that the SEC filings are not conduct, there is a factual dispute between the parties as to whether the SEC filings were prepared in Germany or in the United States. (See MJP at 9-10; Opposition to MJP at 9.) Given that there is no evidence before the Court as to where these documents were prepared, the Court is unable to conclusively limit their connection to the United States at this time.

Accordingly, the Court finds that Defendants' dissemination of DRAM price data, allegedly misleading statements and fraudulent SEC filings, all in the United States, are instances of conduct that were "significant with respect to the alleged [securities] violation[s]" and "furthered the fraudulent scheme" at issue in this case. Grunenthal, 712 F.2d at 424.

**2.     Effects in the United States**

Given the Court's finding that Plaintiffs have established domestic conduct sufficient to permit the Foreign Purchaser claims under Grunenthal, the Court need not determine whether Plaintiffs have also sufficiently alleged effects in the United States under the alternative second prong of the Ninth Circuit's Grunenthal test. The Court thus refrains from commenting on whether Plaintiffs' "global fraud-on-the-market" theory is a sufficient basis for permitting the securities claims of the Foreign Purchaser Plaintiffs. (See Opposition to MJP at 13.)

1    In sum, Plaintiffs have established domestic conduct sufficient to extend the reach of the

2    federal securities laws to the claims of the Foreign Purchaser Plaintiffs in this case.  Accordingly, the

3    Court DENIES Defendants' Motion for Partial Summary Judgment.[8]

4    **B.**    **Plaintiffs' Motion for Class Certification**

5    Plaintiffs move to certify the following class: "All persons who purchased or otherwise

6    acquired Infineon securities between March 13, 2000 and July 19, 2004, inclusive, including

7    investors who purchased on the NYSE and the FSE and investors in Infineon's public offerings, who

8    were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the

9    Company, members of their immediate families and their legal representatives, heirs, successors or

10   assigns and any entity in which defendants have or had a controlling interest."  (Class Motion at 2.)

11   The Court considers whether class certification is appropriate in this case.

12   **1.**    **Rule 23(a) Certification**

13   Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the

14   class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

15   fact common to the class; (3) the claims or defenses of the representative parties are typical of the

16   claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

17   the interests of the class.  Fed. R. Civ. P. 23(a).  These requirements are commonly referred to as

18   numerosity, commonality, typicality, and adequacy of representation, respectively.  See Hanlon v.

19   Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521

20   U.S. 591 (1997)).

21

22   ───────────────────

     [8]  The Court takes note of Defendants' alternative argument that international comity should
23   provide a basis for the Court to decline the extraterritorial application of the securities laws.  (MJP at
     15.)  In support of this theory, Defendants rely on the Supreme Court's holding in F. Hoffman-La
     Roche Ltd. v. Empagran S.A., 542 U.S. 155, 164 (2004), in which the Supreme Court declined to
24   apply federal antitrust laws on an extraterritorial basis, relying on international comity.
          The Court finds, however, that the antitrust laws are distinct from the securities laws in that
25   the Sherman Act expressly does not apply extraterritorially, except as permitted by several narrow
     provisions of the Foreign Trade Antitrust Improvement Act.  See 15 U.S.C. § 6(a).  Defendants cite
26   no authority showing that the securities laws have a similarly limited reach.  Given that cases such
     as Grunenthal expressly permit the extraterritorial exercise of the securities laws, the Court declines
27   to find that international comity limits their application in this case.

28                                                         9

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

a.      **Numerosity**

Plaintiffs contend that the putative class satisfies the numerosity requirement because Infineon stock was traded during the class period on the New York Stock Exchange ("NYSE") and the Frankfurt Stock Exchange ("FSE"), and the volume of trading indicates there are thousands of class members.  (Class Motion at 7.)  Although Defendants do not contest class certification on the basis of numerosity, the Court examines this factor for completeness.[9]

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'"  Hanlon, 150 F.3d at 1019.  A class of one thousand members "clearly satisfies the numerosity requirement."  Sullivan v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 257 (N.D. Cal. 1978).  Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks.  See Yamner v. Boich, No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994) (citing Zeidman v. J. Ray McDermott & Co., 652 F.2d 1030, 1039 (5th Cir. 1981)).

In this case, Infineon stock was traded on the NYSE and FSE daily.  Plaintiffs provide evidence that the weekly volume of trading on the NYSE was frequently in the millions. (Declaration of John K. Grant in Support of Plaintiffs' Motion for Class Certification, Ex. E, hereafter, "Grant Decl. II," Docket Item No. 238.)  Based on this information, the Court finds that Plaintiffs have sufficiently shown that the number of investors who purchased Infineon stock between March 13, 2000 and July 19, 2004 are potentially in the thousands.

Accordingly, the Court finds that Plaintiffs have met the numerosity requirement of Rule 23(a).

---

[9]  Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions."  Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003).

United States District Court

For the Northern District of California

### b.   Commonality

Plaintiffs contend that the commonality requirement of Rule 23(a) is met because the Court will be required to address a series of questions that will affect all members of the putative class. (Class Motion at 7.)  Defendants do not dispute this requirement, but the Court will examine it for completeness.

Rule 23(a)(2) requires that class certification be predicated on "questions of law or fact common to the class."  This requirement "has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon, 150 F.3d at 1019.

In this case, there are at least three issues that are common to the entire class:  (1) whether the federal securities laws were violated by Defendants; (2) whether Defendants omitted or misrepresented material facts about Infineon during the Class Period; and (3) whether Defendants acted with the requisite state of mind.  (Class Motion at 7-8; TAC ¶¶ 131, 135, 138.)  Thus, for each member of the putative class, the core salient factual and legal issues are the same.

Accordingly, the Court finds that Plaintiffs have met the commonality requirement of Rule 23(a)(2).

### c.   Typicality

Plaintiffs contend that the typicality requirement is satisfied because the claims of all members of the putative class derive from the same legal theories and set of operative facts.  (Class Motion at 9.)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Like the commonality requirement, the typicality requirement is permissive: "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  The test is whether "other members have the same or similar injury, whether the

action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon</u>, 976 F.2d at 508.

In this case, the putative class encompasses investors who purchased Infineon stock on both the NYSE and the FSE. As evidence that Infineon securities on both exchanges reacted to the same alleged misrepresentations and subsequent revelations in the same way, Plaintiffs provide a chart showing that Infineon securities on both markets moved in unison. (Grant Decl. II, Ex. F.) Defendants do not dispute typicality on the ground that some members of the putative class purchased stock on the NYSE and others on the FSE. Rather, Defendants contend that Plaintiffs Schroeder, Peano and Charter Township's claims are atypical of the class because each of them lacks standing. (Defendants' Opposition to Motion to Class Certification at 24, hereafter, "Class Opposition," Docket Item No. 253.) Additionally, with respect to Schroeder and Peano, Defendants also contend that they are subject to unique reliance defenses. (<u>Id.</u>)

### i. Charter Township

Defendants contend that Plaintiff Charter Township lacks standing because it purchased and sold Infineon stock before June 19, 2002, the first date that Infineon released corrective information concerning its participation in a price-fixing scheme. (Class Opposition at 15.) Plaintiffs admit that Charter Township sold all of its Infineon stock on November 28, 2000. (TAC Appendix, Ex. C.) Thus, as discussed below in Section IV.B.3, Plaintiff Charter Township will be excluded from the class because it cannot show loss causation. There are, however, other Lead Plaintiffs who meet the typicality requirement.

### ii. Schroeder and Peano

Defendants contend that Plaintiffs Schroeder and Peano are atypical because, as foreign investors, they lack standing and they are subject to unique issues of reliance and loss causation. (Class Opposition at 24.) As discussed above in Section A, the Court has found that the federal securities laws include the claims of the Foreign Purchaser Plaintiffs in this case. Further, as discussed below in Section IV.B.2.a, the Court also finds that, for purposes of class certification, the

United States District Court

For the Northern District of California

fraud-on-the-market presumption applies to all investors who purchased Infineon stock within the class period.  Here, Schroeder and Peano purchased Infineon stock and sold it after the price fixing conspiracy was revealed.  (TAC Appendix, Ex. C.)  As such, their claims are coextensive with the other members of the class.

In sum, the Court finds that Plaintiffs have met the typicality requirement of Rule 23(a).

### d.  Adequacy of Representation

Plaintiffs contend that Schroeder and Peano are adequate class representatives because there is no conflicts of interest between them and the absent class members.  (Class Motion at 11.)  Plaintiffs also contend that class counsel is adequate because Plaintiffs have retained attorneys who have extensive experience in securities litigation and who have prosecuted numerous securities fraud class actions.  (Id. at 11.)  As with numerosity and commonality, Defendants do not contest this requirement, but the Court will examine it for completeness.

Two questions are considered when determining the adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

Here, there is no evidence that Plaintiffs or their counsel have any conflicts of interest with other class members.  Further, upon review of resumes submitted by Plaintiffs' counsel's firm, the Court finds that counsel has sufficient experience in securities litigation and class actions such that they are capable of adequately and vigorously prosecuting this litigation.  (Grant Decl. II, Exs. G, H.)

Accordingly, the Court finds that Plaintiffs have met the adequacy of representation requirement of Rule 23(a).

//

United States District Court

For the Northern District of California

1

2. **Rule 23(b) Certification**

2        In addition to meeting the requirements under Rule 23(a), Plaintiffs must also establish that

3    one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b).

4    (Class Motion at 2.)

5        Under Rule 23(b)(3), a plaintiff seeking certification bears the burden of proving two

6    conjunctive conditions: (1) that the questions of law or fact common to the members of the class

7    predominate over any questions affecting only individual members; and (2) that a class action is

8    superior to other available methods for the fair and efficient adjudication of the controversy.  Zinser

9    v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188, amended by, 273 F.3d 1266 (9th Cir. 2001)

10   (citing Hanon, 976 F.2d at 508)).

11        a.        **Predominance**

12        Plaintiffs contend that common questions of law and fact predominate because Defendants'

13   alleged conduct affected all members of the putative class by artificially inflating the price of

14   Infineon common stock through price-fixing, misleading statements and material omissions.  (Class

15   Motion at 12.)  Defendants contend that predominance is lacking unless the class period is

16   condensed to purchasers who purchased Infineon stock after April 10, 2000 and before September

17   30, 2002.  (Class Opposition at 18-20.)  Thus, the crux of the parties' dispute over predominance is

18   whether all members of the putative class can rely on the fraud-on-the-market presumption of

19   reliance.

20        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

21   cohesive to warrant adjudication by representation."  AmChem, 521 U.S. at 608.  The question of

22   predominance presumes the existence of common issues; thus, a mere showing of commonality is

23   not enough.  Hanlon, 150 F.3d at 1022.  Predominance focuses on the relationship between the

24   common and individual issues.  Id.  "When common questions present a significant aspect of the

25   case and they can be resolved for all members of the class in a single adjudication, there is clear

26   justification for handling the dispute on a representative rather than on an individual basis."  Id.

27

28                                                    14

*United States District Court*
For the Northern District of California

1    Reliance on misstatements, including material omissions, is an element of a cause of action

2    under Rule 10b-5.  Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988).  When the applicability of the

3    fraud-on-the-market presumption is questioned at the class certification phase, a court "must conduct

4    a rigorous examination into whether plaintiffs are entitled to use [the presumption]."[10]  In re Micron

5    Tech., Inc. Sec. Litig., 247 F.R.D. 627, 633 (D. Idaho 2007) (citing Dukes, 509 F.3d at 1178 n.2)).

6    The fraud-on-the-market presumption is "based on the hypothesis that, in an open and developed

7    securities market, the price of a company's stock is determined by the available material information

8    regarding the company and its business. . . .  Misleading statements will therefore defraud

9    purchasers of stock even if the purchasers do not directly rely on the misstatements."  Binder v.

10   Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999) (quoting Basic, 485 U.S. at 241-42 (1988)).  A

11   presumption of reliance cannot exist where such a presumption would be unreasonable in light of

12   corrective information that has entered the market.  See In re Fed. Nat., 247 F.R.D. at 38; Alaska

13   Elec. Pension Fund v. Pharmacia Corp., No. 03-1519, 2007 WL 276150, at *3 (D.N.J. Jan. 25,

14   2007); see also Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247, 254-55 (D.N.J. 1992).

15        In this case, the Court previously found that investors (i.e., the "market") "had notice of facts

16   sufficient to cause an ordinary investor to conduct a further investigation prior to September 30,

17   2002."  (August 13 Order at 8.)  Based on that previous finding, Defendants seek to limit the class to

18   persons who purchased stock before September 30, 2002.  (Class Opposition at 18-19.)  However,

19   Defendants misconstrue the Court's prior finding.  The finding that an ordinary investor had

20   sufficient information to conduct a reasonable investigation into the veracity of representations by

21   Infineon and its officers is not equivalent to a finding that the market had sufficient corrective

22   information to render the fraud-on-the-market presumption unreasonable.  The Court previously

23

24        [10]  Although courts must refrain from addressing the merits of the plaintiffs' causes of action
     on a motion for class certification, they must also "consider evidence which goes to the requirements
25   of Rule 23 at the class certification stage even if the evidence may also relate to the underlying
     merits of the case."  Dukes, 509 F.3d at 1178 n.2.  In this case, the Court finds that applicability of
26   the fraud-on-the-market presumption must be considered in order to evaluate the predominance
     requirement of Rule 23(b)(3).  See, e.g., In re Micron, 247 F.R.D. at 633; In re Fed. Nat. Mortg.
27   Ass'n Sec., Derivative and "ERISA" Litig., 247 F.R.D. 32, 38 (D.D.C. 2008).

28                                                        15

declined to determine whether disclosures by Infineon on November 10, 2003 and July 20, 2004, or Infineon's September 15, 2004 guilty plea in connection with the government's price-fixing investigation constituted sufficient corrective information to place Plaintiffs on inquiry notice. (August 13 Order at 12.)

Neither party provides evidence concerning when the market had sufficient corrective information to make a presumption of reliance unreasonable. However, the Court previously found that Infineon's November 10, 2003 and July 20, 2004 disclosures of substantial accruals concerning litigation arising out of possible violations of federal antitrust laws "could reasonably be considered by an investor to be partial acknowledgments by Infineon that it may be subject to future liability as a result of the government investigations or the civil complaints." (August 13 Order at 11.) It would not be unreasonable at the certification stage to find that the fraud-on-the-market presumption applies up until the latter of these disclosures. See Basic, 485 U.S. at 249 n.29 (noting that courts need not make an ultimate finding on when corrective information vitiates the fraud-on-the-market presumption at the certification stage because "[p]roof of that sort is a matter for trial, throughout which the District Court retains the authority to amend the certification order as may be appropriate"). Thus, the Court finds that predominance is not lacking if the class extends to persons who purchased Infineon securities up until July 20, 2004.

Defendants also contend that the class should not include persons who purchased Infineon securities before April 10, 2000. Defendants contend that stock purchased during Infineon's March 13, 2000 IPO and during the 25-day "quiet period,"[11] which lasted until April 7, 2000, were not purchased in presumptively inefficient markets, and are thus not entitled to the fraud-on-the-market presumption. (Class Opposition at 20-21.)

The Ninth Circuit applies the fraud-on-the-market presumption to stock purchased during an IPO. See In re VeriFone Sec. Litig., 11 F.3d 865, 868 n.3 (9th Cir. 1993); In re Convergent Tech.

---

[11] The 25-day "quiet period" refers to the 25 days following an IPO, in which analysts cannot issue reports concerning a newly public company's securities. See 17 C.F.R. §§ 230.174(d), 242.1019b)(1).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Sec. Litig., 948 F.2d 507, 512 n.2 (9th Cir. 1991); In re Proxima Corp. Sec. Litig., No. 93-1139-IEG (LSP), 1994 WL 374306, at *19 (S.D. Cal. May 3, 1994). Thus, individual issues of reliance will not predominate with respect to investors who purchased Infineon stock on March 13, 2000.

Defendants rely on the Second Circuit's decision in Initial Pub. Offerings Sec. Litig., for the proposition that a market is presumptively inefficient during the 25-day quiet period. 471 F.3d 24 (2d Cir. 2006). The Ninth Circuit has not addressed this issue. However, even if the Court were to follow the Second Circuit's presumption, the Court finds that Plaintiffs have submitted sufficient evidence that may rebut a presumption of inefficiency.

In considering whether stock is traded on an efficient market, courts have generally considered five factors: (1) whether the stock trades at a high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file SEC registration Form S-3, as opposed to Form S-1 or S-2; and (5) whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." Binder, 184 F.3d at 1065 (citing Cammer v. Bloom, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)).

Plaintiffs provide evidence that Infineon stock traded at a high volume each week (including from its IPO to the end of the quiet period), was covered by at least fifty analysts, and that an Infineon market specialist served as a "market maker." (Grant Decl. II, Exs. E, I, K, L, M.) Further, Plaintiffs provide portions of one of Infineon's Form F-3s, which is a foreign corporation's functional equivalent to a Form S-3 registration statement. (Id., Ex. N.) Finally, Plaintiffs provide an analyst report recognizing the effect of DRAM price changes on Infineon's stock price, as well as Infineon announcements preceding drops in Infineon's stock price. (Id., Exs. Q, R, S, T, U, V, W, X, Y.) Defendants contend that much of this evidence is irrelevant because it does not come from the quiet period.[12] (Class Opposition at 21.) Some of the reports submitted by Plaintiffs, however,

---

[12] Analyst reports are not allowed during this period, making the second and third factors non-probative with respect to the quiet period. See 17 C.F.R. §§ 230.174(d), 242.1019b)(1). Further, a Form F-3 cannot be filed until a security has been subject to the requirements of the

17

are almost immediately after the quiet period, and the weekly stock price and volume information indicate that Infineon stock traded at a very high volume during the first four weeks.  This evidence is probative of the efficiency of the market for Infineon stock since its IPO.  Thus, the Court finds that Plaintiffs have submitted sufficient evidence of market efficiency to apply the fraud-on-the-market presumption of reliance for purposes of class certification.[13]

Accordingly, the Court finds that Plaintiffs have met the predominance requirement of Rule 23(b)(3).

### b.   Superiority

Plaintiffs contend that a class action is superior to separate actions for each member of the putative class because the number of class members is too numerous, and the typical claim is too small.  (Class Motion at 15.)

In determining superiority, courts must consider the four factors of Rule 23(b)(3):  (1) the class members' interests in individually controlling a separate action; (2) the extent and nature of litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the manageability of a class action. Zinser, 253 F.3d at 1190; Hunt v. Check Recovery Sys., Inc., 241 F.R.D. 505, 512 (N.D. Cal. 2007). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190.

Here, the Court is not aware of any other action brought on behalf of members of the putative class, and the parties do not identify any.  Moreover, as discussed above, it is almost certain that

_____

Securities and Exchange Act of 1934 for at least 12 months.

[13]  The Court notes that Plaintiffs raised, in the alternative, that a presumption of reliance during the quiet period is appropriate under Arthur Young & Co. v. United States Dist. Ct., 549 F.2d 686 (9th Cir. 1977), and Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), and has considered the supplemental briefing submitted by the parties.  (See Docket Item No. 277.)  In light of the Court's finding that Plaintiffs have made a sufficient showing with respect to reliance to satisfy the predominance requirement of Rule 23(b)(3), the Court need not address Plaintiffs' alternative reliance theories.

United States District Court
For the Northern District of California

there will be thousands of class members.  Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum.  See Epstein v. MCA, Inc., 50 F.3d 644, 668 (9th Cir. 1995), rev'd on other grounds, 516 U.S. 367 (1996).

Defendants contend that a class action would not be superior to other methods of resolving class members' claims because the Court's judgment here may not have preclusive effect in Germany and Italy, where over 90% of the class resides.  (Class Opposition at 9.)  The Court declines to speculate as to the preclusive effect of its judgment.

Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule 23(b)(3).

**3.      Standing for Investors Who Sold Before June 19, 2002**

Defendants contend that the putative class should be limited in that investors who sold their Infineon stock before June 19, 2002 should be excluded from the class because they cannot demonstrate any "injury in fact."  (Class Opposition at 15-16.)

In a rule 10b-5 securities fraud action, a plaintiff must show a loss caused by the truth becoming known about activities that the fraud had concealed.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005); In re Daou Sys., 411 F.3d 1006, 1026-27 (9th Cir. 2005).  Where, as a matter of law, prospective members of the class cannot show loss causally related to the defendants' misrepresentations, they should be excluded from the class.  In re Cornerstone Propane Partners, L.P. Sec. Litig., No. 03-2522 MHP, 2006 WL 1180267, at *9 (N.D. Cal. May 3, 2006).

Here, the Court has found that it is insufficient to allege that investors suffered losses when DRAM prices declined due to Defendants' price fixing scheme.  (January 25 Order at 10.)  Instead, the Court found that it is sufficient, for the purposes of showing loss causation, to allege that investors suffered losses as the price fixing conspiracy was revealed to the public.  (Id. at 11.)  The Court held that this second theory of loss causation met the requirements of Dura because it links the drop in stock price to the revelation of Infineon's anti-competitive activities.  (Id.)

19

1    According to Plaintiffs' allegations, corrective information about the price fixing scheme

2    began to reach the public on June 19, 2002, when Infineon announced that it had received a grand

3    jury subpoena in connection with an investigation into possible violations of federal antitrust laws.

4    (TAC ¶ 116.)  Thus, Plaintiffs' only viable theory of loss causation would exclude investors who

5    sold their stock before June 19, 2002.

6        Accordingly, the Court finds that purchasers of Infineon securities who sold their securities

7    after June 18, 2002 are excluded from the class.

8    **C.    Plaintiffs' and Lawrence D. Sheriff's Motion for Joinder**

9        Plaintiffs and Lawrence D. Sheriff ("Sheriff") move to intervene Sheriff as an additional

10   named plaintiff pursuant to Fed. R. Civ. P. 24.  (Intervenor Motion at 1.)  Defendants filed a

11   statement of non-opposition.  (See Docket Item No. 263.)

12       Although the parties have moved pursuant to Fed. R. Civ. P. 24, the Court finds that this

13   request is more appropriately treated as one for joinder pursuant to Fed. R. Civ. P. 20(a)(1).  Sheriff

14   is an individual in the United States who acquired Infineon shares on the NYSE during the class

15   period.  (Deposition of Lawrence D. Sheriff at 136-39, Docket Item No. 251.)  Sheriff's claims are

16   typical of the class and share common questions of law and fact.

17       Accordingly, the Court GRANTS Plaintiffs' and Sheriff's Motion for Joinder.

18                          **V.  CONCLUSION**

19       The Court DENIES Defendants' Motion for Partial Summary Judgment.  The Court

20   GRANTS Plaintiffs and Sheriff's Motion for Joinder.  The Court GRANTS Plaintiffs' Motion for

21   Class Certification.  The Court certifies Plaintiffs' class as follows:

22       All persons who purchased or otherwise acquired Infineon securities between March 13,
         2000 and July 19, 2004, inclusive, including investors who purchased on the NYSE and the
23       FSE and investors in Infineon's public offerings, who sold their securities after June 18,
         2002, and who were damaged.  Excluded from the Class are defendants, the officers and
24       directors of the Company, members of their immediate families and their legal
         representatives, heirs, successors or assigns and any entity in which defendants have or had a
25       controlling interest.

26

27

28                                      20

On or before **April 6, 2009**, the parties shall file a proposed form of class notice and a joint proposal for dissemination of notice.

Dated: March 6, 2009

_____
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brian P Murray bmurray@murrayfrank.com
Eric J. Belfi ebelfi@labaton.com
Ira A. Schochet ischochet@labaton.com
John K. Grant johnkg@csgrr.com
Jonathan  Gardner jgardner@labaton.com
Marc Lawrence Godino mgodino@glancylaw.com
Mark D. Gursky Mgursky@mofo.com
Mark R.S. Foster mfoster@mofo.com
Mia Ann. Mazza mmazza@mofo.com
Patrick J. Coughlin PatC@csgrr.com
Philip T. Besirof PBesirof@mofo.com
Thomas J. Kennedy tkennedy@murrayfrank.com
William S. Lerach e_file_sd@lerachlaw.com

**Dated: March 6, 2009**                    **Richard W. Wieking, Clerk**


                                            **By:   /s/ JW Chambers**
                                               **Elizabeth Garcia**
                                               **Courtroom Deputy**

**United States District Court**
For the Northern District of California