**No.**

IN THE

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

IN RE INFINEON TECHNOLOGIES AG SECURITIES LITIGATION

JAMES DOLAN, On Behalf of Himself and
All Others Similarly Situated,
***Plaintiff-Respondent*,**
*v.*
INFINEON TECHNOLOGIES AG, INFINEON TECHNOLOGIES NORTH AMERICA
CORP., ULRICH SCHUMACHER, and PETER J. FISCHL,
***Defendants-Petitioners***

On Petition from and Order by the United States District Court
for the Northern District of California
The Honorable Judge James Ware, Presiding
(District Court Master File No. 04-4156-JW)

**PETITION FOR PERMISSION TO APPEAL
FROM ORDER GRANTING CLASS CERTIFICATION**

**(Appendix Filed Under Separate Cover)**

Melvin R. Goldman
Jordan Eth
Mia Mazza
Philip T. Besirof
Mark R.S. Foster
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
*Attorneys for Defendants-Petitioners*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for

Defendants-Petitioners states that Infineon Technologies AG does not have a

parent corporation; no publicly held corporation reports owning 10% or more of

Infineon Technologies AG's outstanding stock; and Infineon Technologies North

America Corp. is a wholly owned subsidiary of Infineon Technologies AG.

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................... iii

I.      INTRODUCTION ................................................................ 1

II.     QUESTION PRESENTED ..................................................... 3

III.    STATEMENT OF FACTS ...................................................... 4

    A.    Plaintiffs' Foreign-Cubed Securities Fraud Claims ............................. 4

    B.    Defendants' Arguments Relating To The Foreign Purchasers ............ 5

    C.    The District Court's Certification Of A Class That Includes
        Foreign Purchasers ............................................... 6

IV.     RELIEF SOUGHT ............................................................... 7

V.      STANDARD FOR GRANTING A RULE 23(f) PETITION FOR
    INTERLOCUTORY REVIEW ................................................ 7

VI.     REASONS FOR GRANTING INTERLOCUTORY REVIEW ................... 8

    A.    The Certification Order Is Manifestly Erroneous. ............................ 8

        1.    The District Court Cannot Adjudicate Claims Of The
            Foreign Purchasers, Who Lack Standing To Sue. .................. 9

        2.    The District Court Did Not Rigorously Analyze Whether
            A Class Action Is The Superior Method For Adjudicating
            The Foreign Purchasers' Claims. ........................................ 11

            a.    The District Court Did Not Address The
                Preclusive Effect Of A Judgment In Germany And
                Italy, Where 90% Of The Class Resides. ..................... 12

            b.    The District Court Did Not Address Whether It
                Could "Fairly And Efficiently" Manage A
                Worldwide Class. ........................................................ 14

    B.    The Certification Order Also Presents A Fundamental Issue Of
        Law Of First Impression That Likely Will Evade End-Of-The-
        Case Review. ............................................................... 15

    C.    The Certification Order Creates Undue Pressure To Settle. ............. 19

VII.    CONCLUSION ................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bersch v. Drexel Firestone, Inc.*,
519 F.2d 974 (2d Cir. 1975) ...................................................................*passim*

*Besinga v. United States*,
923 F.2d 133 (9th Cir. 1991) ............................................................... 15

*Blechner v. Daimler-Benz AG*,
410 F. Supp. 2d 366 (D. Del. 2006) .......................................... 16, 17

*Butte Mining PLC v. Smith*,
76 F.3d 287 (9th Cir. 1996) ...................................................................*passim*

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ...................................................................*passim*

*Cont'l Grain (Austl.) Pty. Ltd. v. Pac. Oilseeds, Inc.*,
592 F.2d 409 (8th Cir. 1979) ............................................................... 10

*Froese v. Staff*,
No. 02 CV 5744,
2003 WL 21523979 (S.D.N.Y. July 7, 2003) ................................. 17

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................... 12

*Grunenthal GmbH v. Hotz*,
712 F.2d 421 (9th Cir. 1983) ...................................................................*passim*

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ............................................................ 16, 19

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ................................................... 13

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008) ........................................... 10, 11

*In re Baan Co. Sec. Litig.*,
   103 F. Supp. 2d 1 (D.D.C. 2000) ...................................................................... 10

*In re Bayer AG Sec. Litig.*,
   423 F. Supp. 2d 105 (S.D.N.Y. 2005) ......................................................... 16, 17

*In re Cable & Wireless, PLC, Sec. Litig.*,
   321 F. Supp. 2d 749 (E.D. Va. 2004)................................................................ 17

*In re DaimlerChrysler AG Sec. Litig.*,
   216 F.R.D. 291 (D. Del. 2003) ................................................................... 13, 15

*In re Rhodia S.A. Sec. Litig.*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007)......................................................... 10, 16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   351 F. Supp. 2d 334 (D. Md. 2004) ................................................................. 17

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   522 F. Supp. 2d 712 (D.N.J. 2007) .................................................................. 16

*In re SCOR Holding (Switz.) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008)............................................................. 16

*In re Telectronics Pacing Sys., Inc.*,
   No. MDL-1057,
   1996 U.S. Dist. LEXIS 11088 (S.D. Ohio Feb. 23, 1996)......................... 13, 14

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................. 13, 14

*In re Yukos Oil Co. Sec. Litig.*,
   No. 04 Civ. 5243 (WHP),
   2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)............................................. 16, 17

*Itoba Ltd. v. LEP Group PLC*,
   54 F.3d 118 (2d. Cir. 1995) ............................................................................. 17

*Kaufman v. Campeau Corp.*,
   744 F. Supp. 808 (S.D. Ohio 1990)................................................................. 16

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) ....................................................................... 7, 9

*McNamara v. Bre-X Minerals Ltd.*,
  32 F. Supp. 2d 920 (E.D. Tex. 1999) ............................................................... 10

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ................................................................. *passim*

*Nathan Gordon Trust v. Northgate Exploration, Ltd.*,
  148 F.R.D. 105 (S.D.N.Y. 1993) .................................................................... 17

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ........................................................................................ 9

*Parra v. Bashas' Inc.*,
  536 F.3d 975 (9th Cir. 2008)*, cert. denied*, 129 S. Ct. 1050 (2009) ............. 8, 14

*Prado-Steiman v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ...................................................................... 19

*Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*,
  482 F.3d 372 (5th Cir. 2007) ......................................................................... 19

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  —U.S.—, 128 S. Ct. 761 (2008) .................................................................... 19

*Tri-Star Farms Ltd. v. Marconi, PLC*,
  225 F. Supp. 2d 567 (W.D. Pa. 2002) ............................................................ 17

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ......................................................................... 15

*West v. Prudential Sec., Inc.*,
  282 F.3d 935 (7th Cir. 2002) ......................................................................... 19

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................... 11, 13, 14

## STATUTES & RULES

Securities Exchange Act of 1934,
  §10(b) [15 U.S.C. § 78j(b)]............................................................................ 4
  §20(a) [15 U.S.C. § 78t] ................................................................................ 4

17 C.F.R.
    § 240.13a-1 ................................................................................. 18
    § 249.220f ................................................................................... 18

Federal Rules of Civil Procedure
    Rule 23 ................................................................................. *passim*
    Rule 23(a)(3) ............................................................................ 1, 9
    Rule 23(b)(3) ......................................................................... *passim*
    Rule 23(b)(3)(A) ......................................................................... 12
    Rule 23(b)(3)(C) ......................................................................... 12
    Rule 23(b)(3)(D) .................................................................... 12, 14
    Rule 23(c)(2)(B) .................................................................... 12, 14
    Rule 23(f) ............................................................................ *passim*
    Rule 23 advisory comm. notes to 1998 amend. subdiv. (f) .............. 20
    Rule 44.1 .............................................................................. 6, 13

## OTHER SOURCES

PricewaterhouseCoopers, 2007 Securities Litigation Study (Apr. 8, 2008),
    *available at*
    http://10b5.pwc.com/PDF/2007%20SECURITY%20LIT%20STUDY%2
    0W-LT.PDF ............................................................................... 18

## I.    INTRODUCTION

This Petition presents questions of first impression in this Court involving the extraterritorial reach of the federal securities laws in class actions.  This Court has never addressed certification of a so-called "foreign-cubed" class action, that is, an action in which:  (1) *foreign* investors assert claims under the American securities laws in an American court against (2) a *foreign* issuer of securities, based on transactions on a (3) *foreign* stock exchange.

The District Court's March 6, 2009 Order (the "Order," attached as Exhibit A) certified a worldwide class that includes residents and citizens from outside the United States who purchased securities of Infineon Technologies AG ("Infineon AG"), a German corporation, on the Frankfurt Stock Exchange (the "Foreign Purchasers").[1]  Three grounds exist for immediate appellate review.

*Manifest Error.*  The District Court manifestly erred in ruling that the Foreign Purchasers' representatives have standing to sue under the federal securities laws and thus meet the typicality requirement of Rule 23(a)(3).[2]  In

---

[1]  The certified class also includes citizens and residents of the United States who purchased Infineon AG's ordinary shares on the Frankfurt Stock Exchange (the "Ordinary Shares") and persons, regardless of citizenship or residence, who purchased Infineon AG's American Depository Shares ("ADSs") on the New York Stock Exchange (the "Domestic Purchasers").  (*See* Order at 20.)  Defendants did not challenge inclusion of Domestic Purchasers in a class, and do not do so here.

[2]  All references to "Rule" are to the Federal Rules of Civil Procedure.

evaluating whether the Foreign Purchasers (and their representatives) have standing, the Order did not address whether any conduct in the United States "directly caused" the Foreign Purchasers' alleged losses, as required by *Grunenthal GmbH v. Hotz*, 712 F.2d 421, 426 (9th Cir. 1983) (articulating, in a non-class action, the standard for extraterritorial application of federal securities laws).  The Order also did not address unchallenged testimony from the Foreign Purchasers' representatives that shows they do not meet the requirement.

The District Court also manifestly erred by failing to analyze — much less rigorously analyze — whether a class action is a superior means of adjudicating the Foreign Purchasers' claims.  Based on foreign law experts' declarations, Defendants showed that Germany and Italy, where more than 90% of the purported class reside, would not recognize a judgment in this case.  Despite this evidence, the District Court "declined to speculate" on the preclusive effect of a judgment. The District Court thus abused its discretion by including the Foreign Purchasers in the class without holding Plaintiffs to their burden of establishing superiority.

*Fundamental Issue Of Law.*  The District Court's ruling stated that the federal securities laws would reach the Foreign Purchasers' claims even if Infineon AG had prepared and issued all of the allegedly false statements at its German headquarters.  That ruling works an unprecedented extension of *Grunenthal*, and is contrary to the result reached in *Morrison v. National Australia*

*Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), the only Federal Court of Appeals decision to have addressed the issue in a foreign-cubed securities class action.  Immediate appellate review will efficiently resolve this issue of first impression that might otherwise evade end-of-the-case review.

*Death Knell.*  End-of-the-case review is unlikely here because inclusion of the Foreign Purchasers places pressure on Defendants to settle without relation to the merits of the claims.  Including the Foreign Purchasers in the class increases Defendants' potential exposure by a factor of twelve.  And Plaintiffs' counsel has publicly stated that they seek an amount of damages that approximates Infineon AG's current market capitalization.  Despite Defendants' belief that Plaintiffs will not be able to prove any damages, the potential exposure to ruinous liability triggers a death-knell situation.

## II.   QUESTION PRESENTED

Whether this Court should grant permission under Rule 23(f) to appeal the certification of a class that includes the Foreign Purchasers where the District Court's Order:  (1) did not address this Court's "directly-caused" requirement in finding that the Foreign Purchasers have standing under the federal securities laws; (2) did not rigorously analyze the superiority of adjudicating the Foreign Purchasers' claims where the Foreign Purchasers would not be bound by a judgment in this action; (3) ruled on a legal issue of first impression in this

Circuit creating an unprecedented expansion of standing for foreign purchasers;

and (4) pressures Defendants to settle without relation to the merits.

### III.    STATEMENT OF FACTS

#### A.    Plaintiffs' Foreign-Cubed Securities Fraud Claims

Infineon AG is a German corporation with headquarters near Munich.

(App. 1:006, ¶ 13.)[3]  During the Class Period spanning March 13, 2000, to July 19,

2004, Infineon AG manufactured dynamic random access memory ("DRAM"), a

type of computer chip.  (App. 1:008–09, ¶ 26.)  On September 15, 2004, Infineon

AG announced that it had agreed to plead guilty to participating in a conspiracy to

fix the price of DRAM sold to six original equipment manufacturers.  (App. 1:002,

009, 146, ¶¶ 2, 27, 121.)  This securities fraud case followed.

Plaintiffs allege in their Third Amended Complaint (the "Complaint") that

Defendants Infineon AG, Infineon Technologies North America Corp., Ulrich

Schumacher (the former Infineon AG CEO), and Peter Fischl (the former Infineon

AG CFO) committed securities fraud during the Class Period.  (App. 1:002–03,

¶¶ 1–3.)  The Complaint alleges that, in violation of Sections 10(b) and 20(a) of the

Securities Exchange Act of 1934, Defendants made materially misleading

statements in press releases and filings with the U.S. Securities and Exchange

Commission (the "SEC") about Infineon AG's financial results, DRAM prices, and

---

[3]  All citations to "App. __:__" are to the Petitioners' Appendix (volume: page).

competition.  (App. 1:025–138, ¶¶ 64–108.)  Plaintiffs allege that those statements were misleading because Infineon AG did not disclose that it had participated in a conspiracy to fix the price of DRAM.  (App. 1:025–140, ¶¶ 64(c)–108(c).)

Infineon AG's equity securities are publicly traded in two forms.  During the Class Period, approximately 90% of its shares were Ordinary Shares that were traded on the Frankfurt Stock Exchange, and 10% of its shares were ADSs that were traded on the New York Stock Exchange.  (App. 1:211; *supra* n.1.)  Foreign Purchasers account for more than 90% of the certified class, including two of the three class representatives:  Reinhard Schroeder, a citizen and resident of Germany, and Graziella Peano, a citizen and resident of Italy.  (App. 2:289–90.)

### B.   Defendants' Arguments Relating To The Foreign Purchasers

On August 25, 2008, Defendants moved for judgment on the pleadings, asserting that the federal securities laws do not apply extraterritorially to the Foreign Purchasers' claims.  (App. 1:180.)  Defendants argued that Plaintiffs failed to meet the "conduct test," which requires a showing that Defendants' U.S. conduct both was significant to the alleged securities fraud *and* directly caused the Foreign Purchasers' alleged losses.  (App. 1:193–200.)

Also on August 25, 2008, Plaintiffs moved to certify a worldwide class consisting of all investors who purchased Infineon AG securities during the Class Period.  (App. 1:156.)  Defendants opposed, arguing, in relevant part, that

Plaintiffs failed to meet their burden under Rule 23 of showing typicality and superiority as (1) the Foreign Purchasers lack standing and (2) a class action is not a superior means of adjudicating the Foreign Purchasers' claims because any judgment in this action would not be given *res judicata* effect in Germany or Italy and because Plaintiffs failed to show that a worldwide action could be fairly and efficiently managed.  (App. 2:292–300, 309.)

### C.  The District Court's Certification Of A Class That Includes Foreign Purchasers

On January 9, 2009, the District Court held a hearing on the motions.  On March 6, 2009, the District Court entered its Order granting class certification. The District Court converted Defendants' motion for judgment on the pleadings into a motion for partial summary judgment and denied the motion.  (Order at 9, 20.)  The District Court ruled that the federal securities laws apply extraterritorially to the Foreign Purchasers' claims.  The District Court thus concluded that Mr. Schroeder and Ms. Peano had standing and, on that basis, found their claims typical, and included Foreign Purchasers in the certified class.  (*Id.* at 12–13.)  The District Court did not address whether Defendants' alleged U.S. conduct "directly caused" the Foreign Purchasers' alleged losses.

The District Court also found Rule 23(b)(3)'s superiority requirement satisfied.  (*Id.* at 18–19.)  The Order explicitly declined to address the foreign law declarations submitted by Defendants pursuant to Rule 44.1 showing that a U.S.

6

court's judgment in an opt-out class action would not be enforceable against the Foreign Purchasers, who constitute 90% of the class.  The Order also did not analyze how the District Court would fairly and efficiently manage a worldwide class with members from more than 120 countries.

## IV.   RELIEF SOUGHT

This Court should grant this Petition to review the District Court's inclusion of the Foreign Purchasers in the class and, after merits briefing, vacate the Order.

## V.   STANDARD FOR GRANTING A RULE 23(f) PETITION FOR INTERLOCUTORY REVIEW

Rule 23(f) permits interlocutory appeals from class certification orders.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003).  This Court has articulated three circumstances that warrant interlocutory review under Rule 23(f):  first, where the order granting class certification is "manifestly erroneous"; second, where "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review"; and third, where class certification results in a "death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).  All three of these circumstances are present here.  (*See* Part VI.)

## VI.   REASONS FOR GRANTING INTERLOCUTORY REVIEW

### A.   The Certification Order Is Manifestly Erroneous.

Interlocutory review of a class certification decision is appropriate where "the district court's class certification decision is manifestly erroneous." *Chamberlan*, 402 F.3d at 959.  A class certification order is manifestly erroneous where "the district court applies an incorrect Rule 23 standard or ignores a directly controlling case." *Id.* at 962.  Manifest error also occurs where the district court, "in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them."  *Parra v. Bashas' Inc.*, 536 F.3d 975, 977–78 (9th Cir. 2008) (citation omitted), *cert. denied*, 129 S. Ct. 1050 (2009).

The District Court manifestly erred in the following ways:  (1) it erroneously found that the Foreign Purchasers' representatives had standing and thus asserted typical claims, while ignoring this Court's requirement in *Grunenthal* that the U.S. securities conduct must have "directly caused" their alleged losses; (2) it failed to analyze, much less rigorously analyze, whether a judgment in this action would be binding on Foreign Purchasers, even though Defendants presented evidence that it would not; and (3) it did not address how it would efficiently manage, consistent with due process, a class of investors from more than 120 countries.

### 1.    The District Court Cannot Adjudicate Claims Of The Foreign Purchasers, Who Lack Standing To Sue.

A class cannot include individuals who lack standing.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Lierboe*, 350 F.3d at 1022–23.  In *Lierboe*, this Court granted a Rule 23(f) petition and ruled that the district court had manifestly erred in certifying a class where the individual plaintiff lacked standing.  *See* 350 F.3d at 1022–23.  Rule 23(f) review is appropriate here because the Foreign Purchasers' representatives lack standing.

The District Court determined that the claims of the Foreign Purchasers' representatives, Mr. Schroeder and Ms. Peano, were typical, as required under Rule 23(a)(3).  (*See* Order at 12–13.)  The District Court's finding of typicality, however, expressly hinged on its decision that the Foreign Purchasers had standing.  (*See id.*)  That decision was manifestly erroneous.

Though not in the class action context, this Court has twice addressed the circumstances in which foreign investors have standing to bring claims in federal courts against foreign companies for alleged violations of the U.S. securities laws.  In *Butte Mining PLC v. Smith*, 76 F.3d 287, 290–91 (9th Cir. 1996), this Court found that the foreign purchasers failed to establish standing, while in *Grunenthal*, 712 F.2d at 425, the foreign purchaser established standing.

Foreign purchasers do not have standing under the federal securities laws unless they satisfy the so-called "conduct test" articulated in *Grunenthal*.   Under

the conduct test, a court must consider whether allegedly fraudulent conduct in the United States was (1) "significant with respect to the alleged violation," *and* (2) "material, that is, directly caus[ed] the losses" claimed by foreign purchasers. *Id.* at 424 (quoting *Cont'l Grain (Austl.) Pty. Ltd. v. Pac. Oilseeds, Inc.*, 592 F.2d 409, 420 (8th Cir. 1979)); *id.* at 426 (citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 993 (2d Cir. 1975); *accord Morrison*, 547 F.3d at 172 & n.6 (citing *Bersch*, 519 F.2d at 979–80).

Here, the District Court failed to address whether the alleged U.S. conduct "directly caused" the Foreign Purchasers' losses.  In *Grunenthal*, this Court found the directly-caused requirement satisfied where the defendant "induced" the foreign purchaser into a stock transaction by making a false statement during a face-to-face meeting in Los Angeles.  712 F.2d at 425.  Similarly, in the class action context, on-point decisions in foreign-cubed class cases from outside this Circuit have ruled, as a matter of law, that foreign purchasers do not meet the "directly caused" prong of the conduct test if they fail to demonstrate that they themselves relied on U.S.–based statements or conduct.  *See, e.g.*, *Morrison*, 547 F.3d at 177; *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 465–66 (S.D.N.Y. 2008); *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 540–41 (S.D.N.Y. 2007); *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 10 (D.D.C. 2000); *McNamara v. Bre-X Minerals Ltd.*, 32 F. Supp. 2d 920, 924–25 (E.D. Tex. 1999).

Plaintiffs failed to meet their burden of showing that Mr. Schroeder or Ms. Peano had relied on *any* U.S. conduct, much less the three specific instances of U.S. conduct cited by the District Court.  (*See* Order at 6–7.)  Indeed, the only evidence on this issue affirmatively showed the opposite:  Mr. Schroeder testified that he had relied on information from German television and German newspapers, and Ms. Peano testified that she relied on statements made by her Italian bank in Italy.  (App. 2:558 n.4; 2:569–76; 2:577–83.)

As foreign purchasers do not have standing if they do not meet the "directly-caused" prong of the conduct test, *see, e.g.*, *AstraZeneca*, 559 F. Supp. 2d at 465–66, it is irrelevant whether they meet the first part of the conduct test, which Defendants contest in any event.  (*See* Part B.)  The District Court should have addressed the "directly-caused" prong, and manifestly erred by not doing so.

> **2.    The District Court Did Not Rigorously Analyze Whether A Class Action Is The Superior Method For Adjudicating The Foreign Purchasers' Claims.**

This Court held in *Zinser v. Accufix Research Inst., Inc.* that "courts must consider the four factors of Rule 23(b)(3)" in determining whether a class action is superior to other methods of adjudicating class member claims.  253 F.3d 1180, 1190 (9th Cir. 2001).[4]  The Supreme Court has directed courts to conduct a

---

[4] The four pertinent superiority factors under Rule 23(b)(3) are:

(Footnote continues on next page.)

"rigorous analysis" of the requirements of Rule 23 before certifying a class. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The District Court manifestly erred by failing to follow these mandates.

> **a.** **The District Court Did Not Address The Preclusive Effect Of A Judgment In Germany And Italy, Where 90% Of The Class Resides.**

In *Bersch*, 519 F.2d at 996 — a seminal opinion endorsed by this Court in *Grunenthal*, 712 F.2d at 426 — the Second Circuit articulated guiding principles for the adjudication of securities class claims asserted by foreign purchasers. *Bersch* explained, "'if defendants prevail against a class they are entitled to a victory no less broad than a defeat would have been.'" 519 F.2d at 996 (citation omitted). *Bersch* excluded the foreign purchasers from the class because the record established that various foreign countries, including Germany and Italy, "would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens, even assuming that the citizens had in fact received notice that they would be bound unless they affirmatively opted out of the plaintiff class." *Id.* at 996–97.

_____

(Footnote continued from previous page.)

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Courts following *Bersch* have rigorously analyzed the *res judicata* issue in considering whether plaintiffs have satisfied their burden under Rule 23(b)(3)'s superiority framework.[5]  Courts have excluded foreign purchasers where plaintiffs fail to show that a U.S. judgment will have preclusive effect in Germany.  *See*, *e.g.*, *Vivendi*, 242 F.R.D. at 95; *Telectronics*, 1996 U.S. Dist. LEXIS 11088, at *3–4.

Plaintiffs had the burden to demonstrate superiority, *see Zinser*, 253 F.3d at 1180, yet they failed to show that a class action is the superior means of adjudicating the Foreign Purchasers' claims.  Despite having no burden to do so, Defendants submitted declarations pursuant to Rule 44.1 from foreign law experts who opined that courts in Germany and Italy, where over 90% of the class members reside, would not give preclusive effect to a U.S. class action judgment.  (App. 2:294–98; 2:313–14; 2:421–22.)[6]  As in *Bersch*, *Vivendi*, and *Telectronics*,

---

[5]  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 282–87 (S.D.N.Y. 2008); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 103–05 (S.D.N.Y. 2007); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 300–01 (D. Del. 2003); *In re Telectronics Pacing Sys., Inc.*, No. MDL-1057, 1996 U.S. Dist. LEXIS 11088, at *3–4 (S.D. Ohio Feb. 23, 1996).

[6]  Although Plaintiffs filed a competing expert declaration in response to Defendants' expert submissions (App. 2:487), Plaintiffs' expert did not dispute that a German court will not recognize a foreign judgment unless absent class members affirmatively submit to jurisdiction of a foreign court.  (App. 2:313, 316–19, 324–25.)  Plaintiffs also argued that the *res judicata* issue was not important given the absence of any other shareholder litigation arising out of these facts.  (App. 2:465.)  Plaintiffs, however, failed to rebut Defendants' showing that as a matter of German
(Footnote continues on next page.)

among others, the District Court should have excluded the Foreign Purchasers from the class because Plaintiffs failed to meet their burden of demonstrating superiority.

The District Court did not even address, much less rigorously analyze, Defendants' evidence demonstrating that a U.S. judgment would not have preclusive effect in Germany or Italy.  Rather, the District Court "declin[ed] to speculate as to the preclusive effect of its judgment."  (Order at 19.)  While the District Court had broad discretion to certify a class, it did not have discretion to disregard a factor entitled to substantial weight within the framework of Rule 23. *See Parra*, 536 F.3d at 977–78; *Zinser*, 253 F.3d at 1186.  It was manifest error for the District Court not to hold Plaintiffs to their burden of establishing superiority.

> ### b.   The District Court Did Not Address Whether It Could "Fairly And Efficiently" Manage A Worldwide Class.

The District Court manifestly erred for the separate reason that it failed to analyze — much less rigorously analyze — the "likely difficulties" (Rule 23(b)(3)(D)) in managing a worldwide class of investors from more than 120 countries.  (App. 2:289.)  The District Court did not hold Plaintiffs to their burden of meeting Rule 23(b)(3)'s requirement of showing the superiority of a class action

---

(Footnote continued from previous page.)

law, the statute of limitations for any other actions has been tolled pending resolution of this action.  (App. 2:326–29.)

for "fair and efficient" the adjudication of the Foreign Purchasers' claims.  *See e.g.*, *DaimlerChrysler AG*, 216 F.R.D. at 295, 300–01.

Defendants demonstrated, among other things, that Plaintiffs failed to carry their burden of showing how they would provide notice that complies with Rule 23(c)(2)(B)'s requirement that absent class members be notified of "the binding effect of a class judgment on [class] members."  Without adequate notice, absent members do not receive due process, are not subject to the court's jurisdiction, and thus are not bound by the court's judgment.  *See Besinga v. United States*, 923 F.2d 133, 136–37 (9th Cir. 1991).

In *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996), this Court found an abuse of discretion where the district court certified a class without addressing various superiority factors, including potential problems in giving notice to class members.  Here, the District Court's silence on this issue was manifest error, given the requirement to rigorously analyze this factor.

> **B.    The Certification Order Also Presents A Fundamental Issue Of Law Of First Impression That Likely Will Evade End-Of-The-Case Review.**

A second compelling reason exists for granting this Petition.  Interlocutory review of the certification decision will allow this Court to resolve an "unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review."

*Chamberlan*, 402 F.3d at 959.  This factor is particularly important, because end-of-the-case review is unlikely:  "very few securities class actions are litigated to conclusion, so review of a novel and important legal issue may be possible only through the Rule 23(f) device."  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 80 (2d Cir. 2004) (citation omitted).  This case is no exception.

The District Court's ruling on the Foreign Purchasers' standing raises an issue of first impression in this Court regarding the application of the first-prong of the *Grunenthal* conduct test in foreign-cubed class actions.  712 F.2d at 424.  The District Court ruled that even if Infineon AG had prepared and issued all of the allegedly misleading statements in Germany, the act of filing allegedly false statements with the SEC could be deemed sufficiently significant to meet the first prong of the *Grunenthal* conduct test.  (*See* Order at 7–8.)

The District Court's ruling works an unprecedented extension of *Grunenthal*, and is contrary to the weight of lower-court authority, as well as the Second Circuit's recent decision in *Morrison*, 547 F.3d at 175–76.[7]  *Morrison* is

---

[7]  *See In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 565–68 (S.D.N.Y. 2008) (filing with SEC does not constitute "substantial" U.S.– based conduct); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 522 F. Supp. 2d 712, 719, 721 (D.N.J. 2007) (same);  *Rhodia*, 531 F. Supp. 2d at 539–41 (same); *In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024, at *10 (S.D.N.Y. Oct. 25, 2006) (same); *Kaufman v. Campeau Corp.*, 744 F. Supp. 808, 810 (S.D. Ohio 1990); *Blechner v. Daimler-Benz AG*, 410 F. Supp. 2d 366, 371 (D. Del. 2006); *In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d 105, 112 (S.D.N.Y. 2005);

(Footnote continues on next page.)

the only opinion by a Federal Court of Appeals considering this issue in a foreign-cubed class action.  *Morrison*, which the Order did not cite, is especially instructive because *Grunenthal* expressly found that this Court's conduct test was consistent with the Second Circuit's test.  *See* 712 F.2d at 426.[8]

At issue in *Morrison* was whether the federal securities laws applied to the claims of foreign purchasers that an Australian company had issued misleading press releases and financial reports filed with the SEC that concealed an alleged accounting fraud by its U.S. subsidiary.  547 F.3d at 169.  *Morrison* affirmed dismissal of the foreign purchasers' claims.  The opinion focused on "what conduct comprise[d] the heart of the alleged fraud."  *Id.* at 175.  *Morrison* reasoned that the publicly traded foreign issuer's corporate headquarters in Australia bore responsibility for preparing and disseminating the allegedly false statements at issue.  *Id.* at 176.  *Morrison* thus held that the place of creation of false statements

---

(Footnote continued from previous page.)

*Froese v. Staff*, No. 02 CV 5744, 2003 WL 21523979, at *1–2 (S.D.N.Y. July 7, 2003) (same); *Tri-Star Farms Ltd. v. Marconi, PLC*, 225 F. Supp. 2d 567, 577–78 (W.D. Pa. 2002) (same); *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y. 1993).  *But see In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 362 (D. Md. 2004); *In re Cable & Wireless, PLC, Sec. Litig.*, 321 F. Supp. 2d 749, 763–64 (E.D. Va. 2004).

[8]  The Order relied on *Itoba Ltd. v. LEP Group PLC*, 54 F.3d 118 (2d Cir. 1995), a pre-*Morrison* case from the Second Circuit that was not a class action, and has been distinguished by many courts, including courts in the Second Circuit, on that basis.  *See, e.g.*, *Bayer*, 423 F. Supp. 2d at 112; *Yukos*, 2006 WL 3026024, at *11; *Blechner*, 410 F. Supp. 2d at 373.

is the "central" focus of the "conduct" test:  "[w]hen a statement or public filing fails to meet these standards [of accuracy], the responsibility, as a practical matter, lies in Australia[.]"  *Id.*

If, as the District Court ruled, the filing of an allegedly misleading statement with the SEC could satisfy the conduct test, regardless of where that statement was created, foreign purchasers would easily satisfy the first prong of the conduct test in every case, as every foreign company that issues publicly traded securities in both the U.S. and abroad is required to file its financial reports with the SEC.  *See, e.g.*, 17 C.F.R. §§ 240.13a-1, 249.220f.  Finding that the filing of SEC documents satisfies the first prong of the conduct test is inconsistent with this Court's ruling in *Butte Mining* that — "[v]igilant and mature as our securities laws are, they are not to be invoked unless *substantial steps* in the perpetuation of the fraud were taken here . . . ."  76 F.3d at 291 (emphasis added).

Appellate review also is important to the law relating to foreign-cubed class actions generally.  *Chamberlan*, 402 F.3d at 959.  The number of cases filed against foreign issuers has been on a steady rise for years.[9]  Given this trend, there is a need for clear and uniform standards for determining whether and when foreign-cubed actions should proceed as class actions.  This Court's grant of this

---

[9]  *See* PricewaterhouseCoopers, 2007 Securities Litigation Study, at 6, 56–58, 63 (Apr. 8, 2008), *available at* http://10b5.pwc.com/PDF/2007%20SECURITY%20LIT%20STUDY%20W-LT.PDF.

Petition will help remedy the "perceived lack of a substantial body of case law addressing the Rule 23 standards," one of the "primary justifications for Rule 23(f)" review. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1275 (11th Cir. 2000).

## C. The Certification Order Creates Undue Pressure To Settle.

Certified securities class actions are prone to abuse and can enable "plaintiffs with weak claims to extort settlements from innocent companies." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, —U.S.—, 128 S. Ct. 761, 765 (2008). Numerous Federal Courts of Appeals have identified this potential abuse as a basis for interlocutory review of a class certification order under Rule 23(f).[10] Inclusion of the Foreign Purchasers in the class enlarges the potential aggregate damages and thus raises the pressure on Defendants to "settle without relation to the merits" of the claims asserted. *Chamberlan*, 402 F.3d at 960.

Although Defendants deny liability in this case, they have assessed the risks posed by this litigation. Defendants estimate that a class of Domestic Purchasers, assuming the most-favorable outcome for Plaintiffs, would create a maximum potential exposure of $6–7 million. (*See* Decl. of Philip T. Besirof (attached as Exhibit B) ¶ 7.) A class that includes the Foreign Purchasers, however, would create potential exposure for Defendants of up to twelve times that amount. (*Id.*)

---

[10] *See Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 379 (5th Cir. 2007); *Hevesi*, 366 F.3d at 80–81; *West v. Prudential Sec., Inc.*, 282 F.3d 935, 937 (7th Cir. 2002).

19

Plaintiffs publicly have stated that they seek as much as $500 million. (*Id.* ¶¶ 2–6, Exs. 1–4.) Although Defendants do not believe that Plaintiffs can prove liability or any damages, much less $500 million, the threatened exposure subjects Defendants to the "'risk of ruinous liability.'" *Chamberlan*, 402 F.3d at 960 (quoting Rule 23 advisory comm. notes to 1998 amends., subdiv. (f)). The amount Plaintiffs seek roughly equals Infineon AG's market capitalization, which has fluctuated between $345 million and $600 million this month, and fallen by more than $5 billion since March 2008. (Decl. of Francois-Xavier Gérard (attached as Exhibit C) ¶¶ 7–8.) The risk of potentially ruinous liability puts extraordinary pressure on Defendants to settle (*id.* ¶ 9), triggering a death-knell situation. *Chamberlan*, 402 F.3d at 960.

## VII.   CONCLUSION

For the reasons discussed above, this Court should grant Defendants' Petition pursuant to Rule 23(f).

Dated:  March 19, 2009                MORRISON & FOERSTER LLP

                                      By: _____
                                          Jordan Eth
                                          Counsel for Defendants-Petitioners

## CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California  94105-2482; I am not a party to the within cause; I am over the age of eighteen years.

I further declare that on March 19, 2009, I served a copy of:

## PETITION FOR PERMISSION TO APPEAL
## FROM ORDER GRANTING CLASS CERTIFICATION

## APPENDIX TO PETITION FOR PERMISSION TO APPEAL
## FROM ORDER GRANTING CLASS CERTIFICATION - VOL. I

## APPENDIX TO PETITION FOR PERMISSION TO APPEAL
## FROM ORDER GRANTING CLASS CERTIFICATION - VOL. II

☒    **BY OVERNIGHT DELIVERY** **[Fed. R. App. Proc. Rule 25(C)]** by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows for collection by UPS at Morrison & Foerster LLP, 425 Market Street, San Francisco, California  94105-2482, in accordance with Morrison & Foerster's ordinary business practice.

I am readily familiar with Morrison & Foerster's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster's business practice the document described below will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it is placed at Morrison & Foerster for collection.

Brian P. Murray
Murray Frank & Sailer LLP
275 Madison Avenue
Suite 801
New York, NY 10016
Phone: 212-682-1818
Email: bmurray@murrayfrank.com

US District Court
Northern District of California
Judge James Ware
280 South 1st Street
San Jose, CA 95113
Courtroom 8, 4th Floor
CHAMBERS COPY

1

And,

☒    **BY PERSONAL SERVICE [[Fed. R. App. Proc. rule 25(C)A]** by placing a true
copy thereof enclosed in a sealed envelope addressed as follows for collection and
delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of
the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and
processing of documents for hand delivery and know that in the ordinary course of
Morrison & Foerster LLP's business practice the document(s) described above will be
taken from Morrison & Foerster LLP's mailroom and hand delivered to the
document's addressee (or left with an employee or person in charge of the
addressee's office) on the same date that it is placed at Morrison & Foerster LLP's
mailroom.

John K. Grant
Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street
Suite 2600
San Francisco, CA 94111
Phone: 415-288-4545
Fax: 415-288-4534
Email: johng@csgrr.com

I declare under penalty of perjury that the above is true and correct.

Executed at San Francisco, California, this 19th day of March, 2009.

Dated:    March 19, 2009                    MORRISON & FOERSTER LLP

                                            By:  _____
                                                 Rachel Ellen Pelletier

sf-2659348

Exhibit A

United States District Court

For the Northern District of California

1

2

3

4

5

6

7    IN THE UNITED STATES DISTRICT COURT

8    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    SAN JOSE DIVISION

10   In re Infineon Technologies AG Securities          NO. C 04-04156 JW
     Litigation

11                                                      **ORDER DENYING DEFENDANTS'
                                                        MOTION FOR PARTIAL SUMMARY**
12                                                      **JUDGMENT; GRANTING PLAINTIFFS'
                                                        MOTION FOR JOINDER; GRANTING**
13                                                      **PLAINTIFFS' MOTION FOR CLASS
                                                        CERTIFICATION**
14   _____/

15                       **I.  INTRODUCTION**

16        Plaintiffs[1] bring this putative class action against Infineon Technologies AG ("Infineon") and

17   certain Infineon officers and directors[2] (collectively, "Defendants"), alleging violations of §§ 10(b)

18   and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission

19   ("SEC") Rule 10b-5.  Plaintiffs allege Defendants engaged in securities fraud, by participating in an

20   illegal price-fixing conspiracy involving Dynamic Random Access Memory ("DRAM"), and then

21   manipulating the price of Infineon stock by making misrepresentations about the impact of the

22   artificially inflated DRAM prices on Infineon's corporate value.

23

24

25

26        [1]  Named Plaintiffs are Reinhard Schroeder, Graziella Peano, and Charter Township of
     Clinton Police and Fire Retirement System.  (Third Amended Complaint for Violation of the Federal
     Securities Laws ¶ 11, hereafter, "TAC," Docket Item No. 159.)

27

28        [2]  Defendants are Infineon, Infineon North America ("Infineon NA"), Ulrich Schumacher
     ("Schumacher"), and Peter J Fischl ("Fischl").  (TAC ¶¶ 13-16.)

Presently before the Court are Plaintiffs' Motion for Class Certification[3] and Defendants' Motion for Judgment on the Pleadings.[4] The Court conducted a hearing on January 9, 2009. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiffs' Motion for Class Certification, GRANTS Plaintiffs' and Intervenor's Motion for Joinder, and DENIES Defendants' Motion for Partial Summary Judgment.

## II.  BACKGROUND

A detailed outline of the facts and allegations in this case may be found in the Court's prior Orders.[5] The Court reviews the relevant procedural history for the purposes of these motions.

This action was first filed on September 30, 2004. (Docket Item No. 1.) On May 22, 2006, the Court granted in part and denied in part Defendants' motions to dismiss the Complaint with leave to amend. (May 22, 2006 Order, Docket Item No. 90.) On July 17, 2007, Plaintiffs filed a Third Amended Complaint, alleging three causes of action: (1) Violation of §10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, against all Defendants for issuing false or misleading statements about revenue, earnings, DRAM prices, and competition; (2) Violation of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against all Defendants for control person liability; and (3) Violation of § 20A of the Exchange Act, 15 U.S.C. § 78t-1, for alleged contemporaneous insider trading. (See TAC.) On January 25, 2008, the Court dismissed Plaintiffs'

---

[3] (hereafter, "Class Motion," Docket Item No. 237.) Also before the Court is Plaintiffs' and Intervenor's Motion to Intervene Lawrence D. Sheriff as an Additional Named Plaintiff. (hereafter, "Intervenor Motion," Docket Item No. 250.)

[4] (Defendants' Motion for Judgment on the Pleadings as to Reinhard Schroeder and All Other "Foreign Purchasers" or, in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction, hereafter, "MJP," Docket Item No. 235.)

Although Defendants have brought this as a motion under Fed. R. Civ. P. 12(c), the Court converts it into a Fed. R. Civ. P. 56 motion for partial summary in order to examine certain evidence presented to the Court for its analysis. Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir. 1982) (the court may look at matters outside the pleadings in a motion for judgment on the pleadings, so long as the court treats the motion as one for summary judgment).

[5] (See August 13, 2008 Order Denying Defendants' Motion for Summary Judgment, hereafter, "August 13 Order," Docket Item No. 234; January 25, 2008 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, hereafter, "January 25 Order," Docket Item No. 199.)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  § 20A claim against all Defendants and Plaintiffs' claims against Defendants Heinrich Florian and

2  T. Rudd Corwin with prejudice.  (See January 25 Order.)  On August 13, 2008, the Court denied

3  Defendants' motion for summary judgment.  (See August 13 Oder.)

4      Presently before the Court are Defendants' Motion for Partial Summary Judgment, Plaintiffs'

5  Motion for Class Certification, and Plaintiffs' and Intervenor's Motion for Joinder.

6  ### III.  STANDARDS

7  **A.**  **Motion for Partial Summary Judgment**

8      Although motions for partial summary judgment are common, Rule 56 of the Federal Rules

9  of Civil Procedure, which governs summary judgment, does not contain an explicit procedure

10  entitled "partial summary judgment."  As with a motion under Rule 56(c), partial summary judgment

11  is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

12  with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

13  moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of

14  partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses."

15  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial

16  responsibility of informing the district court of the basis for its motion, and identifying the evidence

17  which it believes demonstrates the absence of a genuine issue of material fact."  Id. at 323.  The non-

18  moving party must then identify specific facts "that might affect the outcome of the suit under the

19  governing law," thus establishing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

20      When evaluating a motion for partial or full summary judgment, the court views the evidence

21  through the prism of the evidentiary standard of proof that would pertain at trial.  Anderson v.

22  Liberty Lobby Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of

23  the non-moving party, including questions of credibility and of the weight that particular evidence is

24  accorded.  See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court

25  determines whether the non-moving party's "specific facts," coupled with disputed background or

26  contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.

27

28

United States District Court

For the Northern District of California

1  T.W. Elec. Serv., 809 F.2d at 631. In such a case, partial summary judgment is inappropriate.

2  Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-

3  moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec.

4  Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

5  **B.  Class Certification**

6  The decision to certify a class is committed to the discretion of the district court within the

7  guidelines of Federal Rule of Civil Procedure 23. See Fed. R. Civ. P. 23; Doninger v. Pacific

8  Northwest Bell, Inc., 564 F.3d 1304, 1309 (9th Cir. 1977). The party seeking class certification

9  bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one

10  requirement of Rule 23(b) have been met. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir.

11  2007) (citing Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001),

12  amended, 273 F.3d 1266 (9th Cir. 2001)). A district court may certify a class only if, after "rigorous

13  analysis," it determines that the party seeking certification has met its burden. General Telephone

14  Co. of the Southwest v. Falcon, 457 U.S. 147, 158-61 (1982).

15  In reviewing a motion for class certification, the court generally is bound to take the

16  substantive allegations of the complaint as true. In re Coordinated Pretrial Proceedings in Petroleum

17  Products Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d

18  891, 901 (9th Cir. 1975)). However, the court may look beyond the pleadings to determine whether

19  the requirements of Rule 23 have been met. Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th

20  Cir. 1992) (citation omitted). In fact, "courts are not only at liberty to but must consider evidence

21  which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence

22  may also relate to the underlying merits of the case." Dukes, 509 F.3d at 1178 n.2 (internal

23  quotations and citation omitted).

24  //

25

26

27

28                                                          4

# IV. DISCUSSION

## A. Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment on the ground that the federal securities laws do not apply to the claims of "Foreign Purchasers," who are "(1) residents and citizens of countries other than the U.S., and (2) purchased Infineon AG common stock on the Frankfurt Stock Exchange."[6] (MJP at 5.)

The securities laws of the United States apply where there is "some degree of connection between the [securities] fraud and conduct in, or effects on, the United States." Grunenthal GmbH v. Hotz, 712 F.2d 421, 424 (9th Cir. 1983). For conduct in the United States to act as a predicate for application of the securities laws, the conduct must be "significant with respect to the alleged violation" and further the fraudulent scheme. Id. (adopting the Eighth Circuit's test in Continental Grain (Australia) Pty. Ltc. v. Pacific Oilseeds, Inc., 592 F.2d 409, 420 (8th Cir. 1979)). The domestic conduct cannot be "merely preparatory" to the securities fraud, but must be material in the sense that it directly caused the plaintiff's losses. Id. At the very least, jurisdiction in transnational securities cases is appropriate "where at least some activity designed to further the fraudulent scheme occurs within [the United States]." Id. (citing SEC v. Kasser, 548 F.2d 109, 114 (3d Cir. 1977), cert denied, 431 U.S. 938 (1977)).

According to the Ninth Circuit in Grunenthal, the fact that the "jurisdictional hook need not be large to fish for securities law violations" is consistent with the "established objectives of the federal securities laws." Id. First, limiting application of domestic securities laws in cases involving transnational securities transactions "might encourage those who wish to defraud foreign securities purchasers or sellers to use the United States as a base of operations and, in effect, create a haven for such defrauders and manipulators." Id. at 424-25. Second, and more generally, this rule facilitates a

---

[6] Defendants expressly do not move for judgment on the pleadings with respect to claims of "U.S. Purchasers," which Defendants define as "proposed class members who either: (1) are United States citizens or residents, or (2) purchased Infineon AG ADSs on the New York Stock Exchange." (MJP at 5 n.5.)

1   common purpose of the federal securities laws, which is "to achieve a high standard of business

2   ethics in the securities industry." Id. at 425.

3        In this case, Defendants contend that Plaintiffs allege neither effects nor conduct in the

4   United States, with respect to the Foreign Purchasers, sufficient to state a securities claim under the

5   Ninth Circuit's standard in Grunenthal. (MJP at 6.)

6        **1.      Conduct in the United States**

7        Plaintiffs' Complaint alleges several instances of Defendants' conduct in the United States.

8   The issue is whether this conduct is sufficient to meet the standard articulated by the Ninth Circuit in

9   Grunenthal for application of the federal securities laws.

10       First, the Complaint alleges that the artificially inflated prices that resulted from Defendants'

11  admitted domestic DRAM price manipulation was a major contributor to Defendants' ability to

12  fraudulently inflate Infineon AG's stock price. (Plaintiffs' Opposition to Motion for Judgment on

13  the Pleadings at 7, hereafter, "Opposition to MJP," Docket Item No. 261; TAC ¶¶ 28, 31-32, 64.) In

14  relevant part, the Complaint alleges:

> Deceptive and misleading DRAM prices were publicly circulated to investors and analysts in
> the United States. (TAC ¶ 64.) The publication failed to disclose that the reported DRAM
> prices were the result of an illegal price-fixing conspiracy. (Id.) Infineon investors
> purchased securities at prices that were inflated after the publication of misleading DRAM
> prices, and suffered losses as Infineon's stock declined as a result of the collapse of the price-
> fixing conspiracy. (Id.)

18  The conduct alleged above involved the domestic dissemination of DRAM price information that

19  was artificially inflated by Defendants' participation in an antitrust conspiracy. According to this

20  allegation, Defendants' distribution of this DRAM price data throughout the market, including in the

21  United States, ultimately impacted the stock price of Infineon AG to the detriment of its investors.

22  Such conduct, therefore, "furthered the fraudulent scheme" at issue in this case. Grunenthal, 712

23  F.2d at 424.

24       Second, Plaintiffs have evidence that the CEO of Infineon AG, Individual Defendant

25  Schumacher, made three allegedly fraudulent statements in the United States concerning DRAM

26  prices. (Opposition to MJP at 8.) In all three instances, Schumacher was interviewed in New York,

27

28                                                6

United States District Court

For the Northern District of California

1   and commented on DRAM prices.  On March 14, 2000, Schumacher gave an interview to CNBC's

2   Market Watch, in which he stated that the "DRAM market picked up price-wise in the last quarter."[7]

3   On November 16, 2000, in another CNBC interview, Schumacher stated that "distortion in the

4   inventory levels has driven the prices down.  But we expect that to recover pretty soon, most likely

5   in the next quarter." (Id., Ex. B.)  Finally, on May 8, 2001, in a third CNBC interview, Schumacher

6   declared that "inventory levels in the industry are very low . . . which normally is the indicator that

7   in the next quarter the prices go up again." (Id., Ex. C.)  Schumacher's statements, made in the

8   United States to an investor-related media outlet, are further examples of domestic conduct, along

9   with other evidence, could be sufficient to support application of the federal securities laws to the

10  claims of the Foreign Purchaser Plaintiffs.

11       Third, Plaintiffs' Complaint alleges that Defendants made numerous SEC filings in the

12  United States, each of which contained material misrepresentations.  (TAC ¶¶ 65-66, 97, 90-91.)  In

13  each case, the Complaint states that the relevant SEC filing was "[f]iled with the SEC by Infineon,

14  made by Infineon's senior officers, including Zitzewitz and signed by Schumacher and Fischl." (See

15  id.)  Defendants contend, however, that these SEC filings were prepared in Germany, and thus

16  cannot operate as the basis for jurisdiction over the Foreign Purchaser Plaintiffs' claims.  (MJP at 8-

17  10.)  However, the Ninth Circuit has found that conduct as minimal as fraudulently signing a

18  document in the United States can act as a jurisdictional hook for fraud arising out of otherwise

19  entirely transnational securities sales.  Grunenthal, 712 F.2d at 425.  Given that federal securities law

20  places great importance on the SEC filings of publicly traded corporations, and given the fact that

21  such filings are relied on by investors, filing such documents in the United States is just as critical in

22  perpetrating a market-wide fraud as the document signing event was to the fraud alleged in

23  Grunenthal.  Accordingly, even if the SEC filings were prepared in Germany, the Court is persuaded

24  that "the situs of preparations for SEC filings should not be determinative of jurisdiction questions

---

[7] (Declaration of John K. Grant in Support of Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings, Ex. A, hereafter, "Grant Decl.," Docket Item No. 262.)

United States District Court

For the Northern District of California

1    [because] the protections afforded by the [securities laws could] be circumvented simply by

2    preparing SEC filings outside of the United States." Itoba Ltd. v. LEP Group PLC, 54 F.3d 118, 124

3    (2d Cir. 1995).

4         Defendants contends that courts have not literally followed Itoba, and have found that under

5    certain circumstances, whether a SEC filing has "emanated from a foreign source" may limit

6    extension of jurisdiction over a class of largely foreign Plaintiffs. See, e.g., In re Bayer AG Sec.

7    Litig., 423 F. Supp. 2d 105, 112 (S.D.N.Y. 2005). Nonetheless, Defendants have not cited any

8    controlling Ninth Circuit authority suggesting that extraterritorially prepared SEC filings cannot

9    operate as conduct sufficient to permit the claims at issue in this case. Furthermore, even if the

10   Court were to find that the SEC filings are not conduct, there is a factual dispute between the parties

11   as to whether the SEC filings were prepared in Germany or in the United States. (See MJP at 9-10;

12   Opposition to MJP at 9.) Given that there is no evidence before the Court as to where these

13   documents were prepared, the Court is unable to conclusively limit their connection to the United

14   States at this time.

15        Accordingly, the Court finds that Defendants' dissemination of DRAM price data, allegedly

16   misleading statements and fraudulent SEC filings, all in the United States, are instances of conduct

17   that were "significant with respect to the alleged [securities] violation[s]" and "furthered the

18   fraudulent scheme" at issue in this case. Grunenthal, 712 F.2d at 424.

19        **2.    Effects in the United States**

20        Given the Court's finding that Plaintiffs have established domestic conduct sufficient to

21   permit the Foreign Purchaser claims under Grunenthal, the Court need not determine whether

22   Plaintiffs have also sufficiently alleged effects in the United States under the alternative second

23   prong of the Ninth Circuit's Grunenthal test. The Court thus refrains from commenting on whether

24   Plaintiffs' "global fraud-on-the-market" theory is a sufficient basis for permitting the securities

25   claims of the Foreign Purchaser Plaintiffs. (See Opposition to MJP at 13.)

26

27

28                                                      8

**United States District Court**
For the Northern District of California

1    In sum, Plaintiffs have established domestic conduct sufficient to extend the reach of the

2    federal securities laws to the claims of the Foreign Purchaser Plaintiffs in this case.  Accordingly, the

3    Court DENIES Defendants' Motion for Partial Summary Judgment.[8]

4    **B.    Plaintiffs' Motion for Class Certification**

5    Plaintiffs move to certify the following class: "All persons who purchased or otherwise

6    acquired Infineon securities between March 13, 2000 and July 19, 2004, inclusive, including

7    investors who purchased on the NYSE and the FSE and investors in Infineon's public offerings, who

8    were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the

9    Company, members of their immediate families and their legal representatives, heirs, successors or

10   assigns and any entity in which defendants have or had a controlling interest."  (Class Motion at 2.)

11   The Court considers whether class certification is appropriate in this case.

12   **1.    Rule 23(a) Certification**

13   Rule 23(a) provides four requirements that must be satisfied for class certification: (1) the

14   class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

15   fact common to the class; (3) the claims or defenses of the representative parties are typical of the

16   claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

17   the interests of the class.  Fed. R. Civ. P. 23(a).  These requirements are commonly referred to as

18   numerosity, commonality, typicality, and adequacy of representation, respectively.  See Hanlon v.

19   Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521

20   U.S. 591 (1997)).

21

22       [8]  The Court takes note of Defendants' alternative argument that international comity should
     provide a basis for the Court to decline the extraterritorial application of the securities laws.  (MJP at
23   15.)  In support of this theory, Defendants rely on the Supreme Court's holding in F. Hoffman-La
     Roche Ltd. v. Empagran S.A., 542 U.S. 155, 164 (2004), in which the Supreme Court declined to
24   apply federal antitrust laws on an extraterritorial basis, relying on international comity.
         The Court finds, however, that the antitrust laws are distinct from the securities laws in that
25   the Sherman Act expressly does not apply extraterritorially, except as permitted by several narrow
     provisions of the Foreign Trade Antitrust Improvement Act.  See 15 U.S.C. § 6(a).  Defendants cite
26   no authority showing that the securities laws have a similarly limited reach.  Given that cases such
     as Grunenthal expressly permit the extraterritorial exercise of the securities laws, the Court declines
27   to find that international comity limits their application in this case.

28                                                    9

United States District Court

For the Northern District of California

1

#### a. Numerosity

Plaintiffs contend that the putative class satisfies the numerosity requirement because Infineon stock was traded during the class period on the New York Stock Exchange ("NYSE") and the Frankfurt Stock Exchange ("FSE"), and the volume of trading indicates there are thousands of class members. (Class Motion at 7.) Although Defendants do not contest class certification on the basis of numerosity, the Court examines this factor for completeness.[9]

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" Hanlon, 150 F.3d at 1019. A class of one thousand members "clearly satisfies the numerosity requirement." Sullivan v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 257 (N.D. Cal. 1978). Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks. See Yamner v. Boich, No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994) (citing Zeidman v. J. Ray McDermott & Co., 652 F.2d 1030, 1039 (5th Cir. 1981)).

In this case, Infineon stock was traded on the NYSE and FSE daily. Plaintiffs provide evidence that the weekly volume of trading on the NYSE was frequently in the millions. (Declaration of John K. Grant in Support of Plaintiffs' Motion for Class Certification, Ex. E, hereafter, "Grant Decl. II," Docket Item No. 238.) Based on this information, the Court finds that Plaintiffs have sufficiently shown that the number of investors who purchased Infineon stock between March 13, 2000 and July 19, 2004 are potentially in the thousands.

Accordingly, the Court finds that Plaintiffs have met the numerosity requirement of Rule 23(a).

---

[9] Federal Rule of Civil Procedure 23(c) "imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions." Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003).

United States District Court

For the Northern District of California

### b. Commonality

Plaintiffs contend that the commonality requirement of Rule 23(a) is met because the Court will be required to address a series of questions that will affect all members of the putative class. (Class Motion at 7.) Defendants do not dispute this requirement, but the Court will examine it for completeness.

Rule 23(a)(2) requires that class certification be predicated on "questions of law or fact common to the class." This requirement "has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

In this case, there are at least three issues that are common to the entire class: (1) whether the federal securities laws were violated by Defendants; (2) whether Defendants omitted or misrepresented material facts about Infineon during the Class Period; and (3) whether Defendants acted with the requisite state of mind. (Class Motion at 7-8; TAC ¶¶ 131, 135, 138.) Thus, for each member of the putative class, the core salient factual and legal issues are the same.

Accordingly, the Court finds that Plaintiffs have met the commonality requirement of Rule 23(a)(2).

### c. Typicality

Plaintiffs contend that the typicality requirement is satisfied because the claims of all members of the putative class derive from the same legal theories and set of operative facts. (Class Motion at 9.)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like the commonality requirement, the typicality requirement is permissive: "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The test is whether "other members have the same or similar injury, whether the

11

1    action is based on conduct which is not unique to the named plaintiffs, and whether other class

2    members have been injured by the same course of conduct." <u>Hanon</u>, 976 F.2d at 508.

3           In this case, the putative class encompasses investors who purchased Infineon stock on both

4    the NYSE and the FSE. As evidence that Infineon securities on both exchanges reacted to the same

5    alleged misrepresentations and subsequent revelations in the same way, Plaintiffs provide a chart

6    showing that Infineon securities on both markets moved in unison. (Grant Decl. II, Ex. F.)

7    Defendants do not dispute typicality on the ground that some members of the putative class

8    purchased stock on the NYSE and others on the FSE. Rather, Defendants contend that Plaintiffs

9    Schroeder, Peano and Charter Township's claims are atypical of the class because each of them

10    lacks standing. (Defendants' Opposition to Motion to Class Certification at 24, hereafter, "Class

11    Opposition," Docket Item No. 253.) Additionally, with respect to Schroeder and Peano, Defendants

12    also contend that they are subject to unique reliance defenses. (<u>Id.</u>)

13                  **i.**       **Charter Township**

14           Defendants contend that Plaintiff Charter Township lacks standing because it purchased and

15    sold Infineon stock before June 19, 2002, the first date that Infineon released corrective information

16    concerning its participation in a price-fixing scheme. (Class Opposition at 15.) Plaintiffs admit that

17    Charter Township sold all of its Infineon stock on November 28, 2000. (TAC Appendix, Ex. C.)

18    Thus, as discussed below in Section IV.B.3, Plaintiff Charter Township will be excluded from the

19    class because it cannot show loss causation. There are, however, other Lead Plaintiffs who meet the

20    typicality requirement.

21                  **ii.**      **Schroeder and Peano**

22           Defendants contend that Plaintiffs Schroeder and Peano are atypical because, as foreign

23    investors, they lack standing and they are subject to unique issues of reliance and loss causation.

24    (Class Opposition at 24.) As discussed above in Section A, the Court has found that the federal

25    securities laws include the claims of the Foreign Purchaser Plaintiffs in this case. Further, as

26    discussed below in Section IV.B.2.a, the Court also finds that, for purposes of class certification, the

27

28                                 12

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  fraud-on-the-market presumption applies to all investors who purchased Infineon stock within the

2  class period.  Here, Schroeder and Peano purchased Infineon stock and sold it after the price fixing

3  conspiracy was revealed.  (TAC Appendix, Ex. C.)  As such, their claims are coextensive with the

4  other members of the class.

5       In sum, the Court finds that Plaintiffs have met the typicality requirement of Rule 23(a).

6            **d.**     **Adequacy of Representation**

7       Plaintiffs contend that Schroeder and Peano are adequate class representatives because there

8  is no conflicts of interest between them and the absent class members.  (Class Motion at 11.)

9  Plaintiffs also contend that class counsel is adequate because Plaintiffs have retained attorneys who

10 have extensive experience in securities litigation and who have prosecuted numerous securities fraud

11 class actions.  (Id. at 11.)  As with numerosity and commonality, Defendants do not contest this

12 requirement, but the Court will examine it for completeness.

13      Two questions are considered when determining the adequacy of representation: "(1) do the

14 named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

15 will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

16 Hanlon, 150 F.3d at 1020.

17      Here, there is no evidence that Plaintiffs or their counsel have any conflicts of interest with

18 other class members.  Further, upon review of resumes submitted by Plaintiffs' counsel's firm, the

19 Court finds that counsel has sufficient experience in securities litigation and class actions such that

20 they are capable of adequately and vigorously prosecuting this litigation.  (Grant Decl. II, Exs. G,

21 H.)

22      Accordingly, the Court finds that Plaintiffs have met the adequacy of representation

23 requirement of Rule 23(a).

24 //

25

26

27

28                               13

United States District Court
For the Northern District of California

### 2. Rule 23(b) Certification

In addition to meeting the requirements under Rule 23(a), Plaintiffs must also establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b). (Class Motion at 2.)

Under Rule 23(b)(3), a plaintiff seeking certification bears the burden of proving two conjunctive conditions: (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188, amended by, 273 F.3d 1266 (9th Cir. 2001) (citing Hanon, 976 F.2d at 508)).

### a. Predominance

Plaintiffs contend that common questions of law and fact predominate because Defendants' alleged conduct affected all members of the putative class by artificially inflating the price of Infineon common stock through price-fixing, misleading statements and material omissions. (Class Motion at 12.) Defendants contend that predominance is lacking unless the class period is condensed to purchasers who purchased Infineon stock after April 10, 2000 and before September 30, 2002. (Class Opposition at 18-20.) Thus, the crux of the parties' dispute over predominance is whether all members of the putative class can rely on the fraud-on-the-market presumption of reliance.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." AmChem, 521 U.S. at 608. The question of predominance presumes the existence of common issues; thus, a mere showing of commonality is not enough. Hanlon, 150 F.3d at 1022. Predominance focuses on the relationship between the common and individual issues. Id. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id.

14

1    Reliance on misstatements, including material omissions, is an element of a cause of action

2  under Rule 10b-5.  Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988).  When the applicability of the

3  fraud-on-the-market presumption is questioned at the class certification phase, a court "must conduct

4  a rigorous examination into whether plaintiffs are entitled to use [the presumption]."[10]  In re Micron

5  Tech., Inc. Sec. Litig., 247 F.R.D. 627, 633 (D. Idaho 2007) (citing Dukes, 509 F.3d at 1178 n.2)).

6  The fraud-on-the-market presumption is "based on the hypothesis that, in an open and developed

7  securities market, the price of a company's stock is determined by the available material information

8  regarding the company and its business. . . .  Misleading statements will therefore defraud

9  purchasers of stock even if the purchasers do not directly rely on the misstatements."  Binder v.

10  Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999) (quoting Basic, 485 U.S. at 241-42 (1988)).  A

11  presumption of reliance cannot exist where such a presumption would be unreasonable in light of

12  corrective information that has entered the market.  See In re Fed. Nat., 247 F.R.D. at 38; Alaska

13  Elec. Pension Fund v. Pharmacia Corp., No. 03-1519, 2007 WL 276150, at *3 (D.N.J. Jan. 25,

14  2007); see also Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247, 254-55 (D.N.J. 1992).

15    In this case, the Court previously found that investors (i.e., the "market") "had notice of facts

16  sufficient to cause an ordinary investor to conduct a further investigation prior to September 30,

17  2002." (August 13 Order at 8.)  Based on that previous finding, Defendants seek to limit the class to

18  persons who purchased stock before September 30, 2002.  (Class Opposition at 18-19.)  However,

19  Defendants misconstrue the Court's prior finding.  The finding that an ordinary investor had

20  sufficient information to conduct a reasonable investigation into the veracity of representations by

21  Infineon and its officers is not equivalent to a finding that the market had sufficient corrective

22  information to render the fraud-on-the-market presumption unreasonable.  The Court previously

---

24    [10]  Although courts must refrain from addressing the merits of the plaintiffs' causes of action on a motion for class certification, they must also "consider evidence which goes to the requirements of Rule 23 at the class certification stage even if the evidence may also relate to the underlying merits of the case."  Dukes, 509 F.3d at 1178 n.2.  In this case, the Court finds that applicability of the fraud-on-the-market presumption must be considered in order to evaluate the predominance requirement of Rule 23(b)(3).  See, e.g., In re Micron, 247 F.R.D. at 633; In re Fed. Nat. Mortg. Ass'n Sec., Derivative and "ERISA" Litig., 247 F.R.D. 32, 38 (D.D.C. 2008).

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   declined to determine whether disclosures by Infineon on November 10, 2003 and July 20, 2004, or

2   Infineon's September 15, 2004 guilty plea in connection with the government's price-fixing

3   investigation constituted sufficient corrective information to place Plaintiffs on inquiry notice.

4   (August 13 Order at 12.)

5          Neither party provides evidence concerning when the market had sufficient corrective

6   information to make a presumption of reliance unreasonable.  However, the Court previously found

7   that Infineon's November 10, 2003 and July 20, 2004 disclosures of substantial accruals concerning

8   litigation arising out of possible violations of federal antitrust laws "could reasonably be considered

9   by an investor to be partial acknowledgments by Infineon that it may be subject to future liability as

10  a result of the government investigations or the civil complaints."  (August 13 Order at 11.)  It would

11  not be unreasonable at the certification stage to find that the fraud-on-the-market presumption

12  applies up until the latter of these disclosures.  See Basic, 485 U.S. at 249 n.29 (noting that courts

13  need not make an ultimate finding on when corrective information vitiates the fraud-on-the-market

14  presumption at the certification stage because "[p]roof of that sort is a matter for trial, throughout

15  which the District Court retains the authority to amend the certification order as may be

16  appropriate").  Thus, the Court finds that predominance is not lacking if the class extends to persons

17  who purchased Infineon securities up until July 20, 2004.

18         Defendants also contend that the class should not include persons who purchased Infineon

19  securities before April 10, 2000.  Defendants contend that stock purchased during Infineon's March

20  13, 2000 IPO and during the 25-day "quiet period,"[11] which lasted until April 7, 2000, were not

21  purchased in presumptively inefficient markets, and are thus not entitled to the fraud-on-the-market

22  presumption.  (Class Opposition at 20-21.)

23         The Ninth Circuit applies the fraud-on-the-market presumption to stock purchased during an

24  IPO.  See In re VeriFone Sec. Litig., 11 F.3d 865, 868 n.3 (9th Cir. 1993); In re Convergent Tech.

25  _____

26         [11]  The 25-day "quiet period" refers to the 25 days following an IPO, in which analysts
    cannot issue reports concerning a newly public company's securities.  See 17 C.F.R. §§ 230.174(d),
27  242.1019b)(1).

28                                                    16

1    <u>Sec. Litig.</u>, 948 F.2d 507, 512 n.2 (9th Cir. 1991); <u>In re Proxima Corp. Sec. Litig.</u>, No. 93-1139-IEG

2    (LSP), 1994 WL 374306, at *19 (S.D. Cal. May 3, 1994). Thus, individual issues of reliance will

3    not predominate with respect to investors who purchased Infineon stock on March 13, 2000.

4           Defendants rely on the Second Circuit's decision in <u>Initial Pub. Offerings Sec. Litig.</u>, for the

5    proposition that a market is presumptively inefficient during the 25-day quiet period. 471 F.3d 24

6    (2d Cir. 2006). The Ninth Circuit has not addressed this issue. However, even if the Court were to

7    follow the Second Circuit's presumption, the Court finds that Plaintiffs have submitted sufficient

8    evidence that may rebut a presumption of inefficiency.

9           In considering whether stock is traded on an efficient market, courts have generally

10   considered five factors: (1) whether the stock trades at a high weekly volume; (2) whether securities

11   analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs;

12   (4) whether the company is eligible to file SEC registration Form S-3, as opposed to Form S-1 or

13   S-2; and (5) whether there are "empirical facts showing a cause and effect relationship between

14   unexpected corporate events or financial releases and an immediate response in the stock price."

15   <u>Binder</u>, 184 F.3d at 1065 (citing <u>Cammer v. Bloom</u>, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)).

16          Plaintiffs provide evidence that Infineon stock traded at a high volume each week (including

17   from its IPO to the end of the quiet period), was covered by at least fifty analysts, and that an

18   Infineon market specialist served as a "market maker." (Grant Decl. II, Exs. E, I, K, L, M.) Further,

19   Plaintiffs provide portions of one of Infineon's Form F-3s, which is a foreign corporation's

20   functional equivalent to a Form S-3 registration statement. (<u>Id.</u>, Ex. N.) Finally, Plaintiffs provide

21   an analyst report recognizing the effect of DRAM price changes on Infineon's stock price, as well as

22   Infineon announcements preceding drops in Infineon's stock price. (<u>Id.</u>, Exs. Q, R, S, T, U, V, W,

23   X, Y.) Defendants contend that much of this evidence is irrelevant because it does not come from

24   the quiet period.[12] (Class Opposition at 21.) Some of the reports submitted by Plaintiffs, however,

26          [12] Analyst reports are not allowed during this period, making the second and third factors
27   non-probative with respect to the quiet period. <u>See</u> 17 C.F.R. §§ 230.174(d), 242.1019b)(1).
     Further, a Form F-3 cannot be filed until a security has been subject to the requirements of the

28                                                      17

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   are almost immediately after the quiet period, and the weekly stock price and volume information

2   indicate that Infineon stock traded at a very high volume during the first four weeks.  This evidence

3   is probative of the efficiency of the market for Infineon stock since its IPO.  Thus, the Court finds

4   that Plaintiffs have submitted sufficient evidence of market efficiency to apply the fraud-on-the-

5   market presumption of reliance for purposes of class certification.[13]

6         Accordingly, the Court finds that Plaintiffs have met the predominance requirement of Rule

7   23(b)(3).

8              **b.**     **Superiority**

9         Plaintiffs contend that a class action is superior to separate actions for each member of the

10   putative class because the number of class members is too numerous, and the typical claim is too

11   small.  (Class Motion at 15.)

12         In determining superiority, courts must consider the four factors of Rule 23(b)(3):  (1) the

13   class members' interests in individually controlling a separate action; (2) the extent and nature of

14   litigation concerning the controversy already begun by or against class members; (3) the desirability

15   of concentrating the litigation in the particular forum; and (4) the manageability of a class action.

16   Zinser, 253 F.3d at 1190; Hunt v. Check Recovery Sys., Inc., 241 F.R.D. 505, 512 (N.D. Cal. 2007).

17   "A consideration of these factors requires the court to focus on the efficiency and economy elements

18   of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated

19   most profitably on a representative basis."  Zinser, 253 F.3d at 1190.

20         Here, the Court is not aware of any other action brought on behalf of members of the putative

21   class, and the parties do not identify any.  Moreover, as discussed above, it is almost certain that

22

23   Securities and Exchange Act of 1934 for at least 12 months.

24      [13] The Court notes that Plaintiffs raised, in the alternative, that a presumption of reliance
during the quiet period is appropriate under Arthur Young & Co. v. United States Dist. Ct., 549 F.2d

25   686 (9th Cir. 1977), and Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), and
has considered the supplemental briefing submitted by the parties.  (See Docket Item No. 277.)  In

26   light of the Court's finding that Plaintiffs have made a sufficient showing with respect to reliance to
satisfy the predominance requirement of Rule 23(b)(3), the Court need not address Plaintiffs'

27   alternative reliance theories.

28                                        18

1   there will be thousands of class members. Where thousands of identical complaints would have to

2   be filed, it is superior to concentrate claims through a class action in a single forum. See Epstein v.

3   MCA, Inc., 50 F.3d 644, 668 (9th Cir. 1995), rev'd on other grounds, 516 U.S. 367 (1996).

4        Defendants contend that a class action would not be superior to other methods of resolving

5   class members' claims because the Court's judgment here may not have preclusive effect in

6   Germany and Italy, where over 90% of the class resides. (Class Opposition at 9.) The Court

7   declines to speculate as to the preclusive effect of its judgment.

8        Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule

9   23(b)(3).

10       **3.        Standing for Investors Who Sold Before June 19, 2002**

11       Defendants contend that the putative class should be limited in that investors who sold their

12  Infineon stock before June 19, 2002 should be excluded from the class because they cannot

13  demonstrate any "injury in fact." (Class Opposition at 15-16.)

14       In a rule 10b-5 securities fraud action, a plaintiff must show a loss caused by the truth

15  becoming known about activities that the fraud had concealed. Dura Pharm., Inc. v. Broudo, 544

16  U.S. 336, 341 (2005); In re Daou Sys., 411 F.3d 1006, 1026-27 (9th Cir. 2005). Where, as a matter

17  of law, prospective members of the class cannot show loss causally related to the defendants'

18  misrepresentations, they should be excluded from the class. In re Cornerstone Propane Partners,

19  L.P. Sec. Litig., No. 03-2522 MHP, 2006 WL 1180267, at *9 (N.D. Cal. May 3, 2006).

20       Here, the Court has found that it is insufficient to allege that investors suffered losses when

21  DRAM prices declined due to Defendants' price fixing scheme. (January 25 Order at 10.) Instead,

22  the Court found that it is sufficient, for the purposes of showing loss causation, to allege that

23  investors suffered losses as the price fixing conspiracy was revealed to the public. (Id. at 11.) The

24  Court held that this second theory of loss causation met the requirements of Dura because it links the

25  drop in stock price to the revelation of Infineon's anti-competitive activities. (Id.)

26

27

28                                                              19

United States District Court

For the Northern District of California

1    According to Plaintiffs' allegations, corrective information about the price fixing scheme

2  began to reach the public on June 19, 2002, when Infineon announced that it had received a grand

3  jury subpoena in connection with an investigation into possible violations of federal antitrust laws.

4  (TAC ¶ 116.)  Thus, Plaintiffs' only viable theory of loss causation would exclude investors who

5  sold their stock before June 19, 2002.

6    Accordingly, the Court finds that purchasers of Infineon securities who sold their securities

7  after June 18, 2002 are excluded from the class.

8  **C.    Plaintiffs' and Lawrence D. Sheriff's Motion for Joinder**

9    Plaintiffs and Lawrence D. Sheriff ("Sheriff") move to intervene Sheriff as an additional

10  named plaintiff pursuant to Fed. R. Civ. P. 24.  (Intervenor Motion at 1.)  Defendants filed a

11  statement of non-opposition.  (See Docket Item No. 263.)

12    Although the parties have moved pursuant to Fed. R. Civ. P. 24, the Court finds that this

13  request is more appropriately treated as one for joinder pursuant to Fed. R. Civ. P. 20(a)(1).  Sheriff

14  is an individual in the United States who acquired Infineon shares on the NYSE during the class

15  period.  (Deposition of Lawrence D. Sheriff at 136-39, Docket Item No. 251.)  Sheriff's claims are

16  typical of the class and share common questions of law and fact.

17    Accordingly, the Court GRANTS Plaintiffs' and Sheriff's Motion for Joinder.

18                                **V.  CONCLUSION**

19    The Court DENIES Defendants' Motion for Partial Summary Judgment.  The Court

20  GRANTS Plaintiffs and Sheriff's Motion for Joinder.  The Court GRANTS Plaintiffs' Motion for

21  Class Certification.  The Court certifies Plaintiffs' class as follows:

22        All persons who purchased or otherwise acquired Infineon securities between March 13,
          2000 and July 19, 2004, inclusive, including investors who purchased on the NYSE and the
23        FSE and investors in Infineon's public offerings, who sold their securities after June 18,
          2002, and who were damaged.  Excluded from the Class are defendants, the officers and
24        directors of the Company, members of their immediate families and their legal
          representatives, heirs, successors or assigns and any entity in which defendants have or had a
25        controlling interest.

26

27

28                                        20

On or before **April 6, 2009**, the parties shall file a proposed form of class notice and a joint proposal for dissemination of notice.

Dated: March 6, 2009

_____
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brian P Murray bmurray@murrayfrank.com
Eric J. Belfi ebelfi@labaton.com
Ira A. Schochet ischochet@labaton.com
John K. Grant johnkg@csgrr.com
Jonathan Gardner jgardner@labaton.com
Marc Lawrence Godino mgodino@glancylaw.com
Mark D. Gursky Mgursky@mofo.com
Mark R.S. Foster mfoster@mofo.com
Mia Ann. Mazza mmazza@mofo.com
Patrick J. Coughlin PatC@csgrr.com
Philip T. Besirof PBesirof@mofo.com
Thomas J. Kennedy tkennedy@murrayfrank.com
William S. Lerach e_file_sd@lerachlaw.com

**Dated: March 6, 2009**                     **Richard W. Wieking, Clerk**


                                             **By:   /s/ JW Chambers**
                                                 **Elizabeth Garcia**
                                                 **Courtroom Deputy**

**United States District Court**
For the Northern District of California

Exhibit B

No. ---------

IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

IN RE INFINEON TECHNOLOGIES AG SECURITIES LITIGATION

JAMES DOLAN, On Behalf of Himself and
All Others Similarly Situated,
***Plaintiff-Respondent***,
*v.*
INFINEON TECHNOLOGIES AG, INFINEON TECHNOLOGIES NORTH AMERICA
CORP., ULRICH SCHUMACHER, and PETER J. FISCHL
***Defendants-Petitioners***

On Petition from and Order by the United States District Court
for the Northern District of California
The Honorable Judge James Ware, Presiding
(District Court Master File No. 04-4156-JW)

**DECLARATION OF PHILIP T. BESIROF IN SUPPORT OF
DEFENDANTS' PETITION FOR PERMISSION TO APPEAL**

Melvin R. Goldman
Jordan Eth
Mia Mazza
Philip T. Besirof
Mark R.S. Foster
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
*Attorneys For Defendants-Petitioners*

I, Philip T. Besirof, declare as follows:

1.      I am licensed to practice in California and am admitted to practice before this Court.  I am a partner with the law firm of Morrison & Foerster LLP, counsel of record for Defendants/Petitioners Infineon Technologies AG, Infineon Technologies North America Corp., Ulrich Schumacher, and Peter J. Fischl (collectively, "Defendants") in this matter.  I am familiar with the facts set forth herein, and if sworn as a witness, I could and would testify competently thereto.

2.      Although the parties have not yet conducted damages discovery nor exchanged expert reports in this litigation, Plaintiffs' counsel has stated that they seek damages of $500 million.  Plaintiffs' counsel's statements about damages have been publicly reported in various sources.

3.      Attached as Exhibit 1 is a transcript of the May 3, 2008 internet radio interview with Plaintiffs' co-counsel in this litigation, Mark Shiefer, a member of the German law firm, TILP.  A certified English translation of relevant excerpts of the interview is located in the margins of Exhibit 1 in dialogue boxes.

4.      Attached as Exhibit 2 is a February 1, 2008 article published in *Financial Times Deutschland*.  A certified English translation of the relevant excerpts of the article is located in the margin of Exhibit 2 in dialogue boxes.

5.      Attached as Exhibit 3 is a February 2, 2008 article published in the German newspaper, *Frankfurter Allgemeine Zeitung*.  A certified English translation of relevant excerpts of the article is located in the margins of Exhibit 3 in dialogue boxes.

6.      Attached as Exhibit 4 is a certification of the English translations in the margins of Exhibits 1-3.

7.      Based on Defendants' analysis to date, we estimate that if the class were defined to include only citizens and residents of the United States, and investors who purchased Infineon securities on the New York Stock Exchange,

Infineon's maximum potential exposure for damages would be in the range of $6-7 million.  If the Foreign Purchasers were included in the class, however, we estimate that Infineon's maximum potential exposure would increase by a factor of 12.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on March 19, 2009, in San Francisco, California.

_____
Philip T. Besirof

Exhibit 1

Börsenradio Network AG

Der Informationskanal in Sachen Börse

„Mein Name ist Mark Schiefer. Ich bin Anwalt für die Tilp PLC. Wir sind eine Kanzlei die zugelassen ist im Staat New York. Ich fungiere hier als der Anwalt und ich habe die Anwaltszulassung für diesen Staat als auch hier für Deutschland.

Frage:
Herr Schiefer, heute wollen wir über Infineon sprechen. Seit dem Börsengang von Infineon als eigenständige Firma hat das Unternehmen immer schon für Schlagzeilen gesorgt. Sie sind Rechtsanwalt und klagen in den USA gegen die Firma. Warum in den USA. Infineon ist doch ein DAX-Unternehmen und was ist denn der Hintergrund der Klage?

Antwort:
Also, da muss man natürlich sagen, dass Infineon auch in den USA gelistet ist und es hier zu Erweiterungen kam, die hier in Deutschland so nicht absehbar waren. In den USA haben wir ganz andere Möglichkeiten auch was die Recherche betrifft, d. h. die Discovery. Das ist ein Begriff, der dafür steht, dass der Kläger die Möglichkeit hat, hier Informationsmaterialien von der Beklagtenseite zu bekommen, um die Klage zu forcieren.

Frage:
Nun hat Tilp Rechtsanwälte einen Beschluss erwirkt mit Datum vom 25.01.2008, in dem von dem Ausforschungsverfahren die Rede ist. Das soll neue wichtige Erkenntnisse zugunsten der Klägerseite liefern. Was bedeutet das denn für den Laien ausgedrückt?

Antwort:
Also, ich habe es gerade ja schon kurz angesprochen, diese Ausforschung besteht nach deutschem Recht nicht, allerdings in den USA. Es handelt sich hierbei um die Möglichkeit, von der Beklagtenseite Informationsmaterial zu bekommen. Das kann sehr weit gehen. Das kann dazu führen, dass man den gesamten E-Mail-Verkehr abrufen könnte, die interne Kommunikation muss offen gelegt werden und wenn die Beklagtenseite hierzu nicht willens ist, kann hier auch Zwang ausgeübt werden bzw. kann sich dies letztendlich nachteilig für die Beklagtenseite auswirken.

Frage:
Bei der Klage handelt es sich um eine Sammelklage und insgesamt ist die Rede von Schadensersatzzahlungen in Höhe von über 500 Millionen Dollar. Was bedeutet das für Infineon? Ist abzusehen, dass die Summe erstattet werden muss? Ein führender Kläger aus der Sammelklage, den Sie mit Ihrer Kanzlei vertreten, macht z. B. alleine Verluste von 900.000 Dollar geltend. Muss dass der Ex-CEO Schumacher erstatten oder greift da eine Versicherung?

Antwort:
Ob da eine Versicherung greift, das kann nur Infineon selbst beantworten. Es gibt normalerweise die D&O, die Director and Office-Versicherung, die hier unter Umständen

eingreifen könnte. Aber das ist eine Frage im Innenverhältnis, die Infineon zu klären hätte. Es ist richtig, dass sie hier einen Privatanleger haben, der einen Schaden von ca. 900.000 Dollar hatte und dessen Existenz gefährdet ist. Was die Schadenshöhe insgesamt betrifft von 500 Millionen, so ist das eine Zahl, von der man maximal ausgehen müßte aufgrund von Sachverständigengutachten, die uns vorliegen.

Frage:
Wie ich eben schon sagte, ist Ulrich Schumacher ja mittlerweile ja Ex-CEO. Dennoch nehme ich an, dass das Unternehmen versucht, ihn zur Verantwortung zu ziehen. Welche rechtlichen Mittel kann Infineon denn noch gegen Ulrich Schumacher einsetzen?

Antwort:
Das ist auch eine Frage, die man eher an Infineon richten müßte. Ich möchte mich hierzu nicht zu Verjährungsvorschriften oder dergleichen auslassen. Ich weiß nicht, in wieweit hier noch Möglichkeiten bestehen, intern gegen ihn vorzugehen. Wir wissen nur, dass unsere Klage hierzu letztendlich genügend Substanz hat, um den weiteren Verlauf positiv zu beeinflussen.

Frage:
Hintergrund der Klage ist ja auch, wenn ich richtig informiert bin, dass Infineon wegen illegaler Preisabsprachen angeklagt wird. Ist das richtig?

Antwort:
Das ist korrekt. Hier ging es letztendlich um Kartellrechtsabsprachen im Bereich der Microchips und unsere Klage geht auch auf eine Entscheidung zurück bzw. wo Infineon zugestimmt hat, 160 Millionen an Schadenersatz an den Staat USA zu zahlen. Denn diese Kartellrechtsabsprachen waren eben von Infineon bereits zugegeben worden.

Frage:
Wie lange liegt das denn zurück? Wie lange liegt die Preisabsprache zurück und seit wann läuft die Anklage?

Antwort:
Die Preisabsprachen ziehen sich eigentlich bis ins Jahr 1999 zurück und Infineon hat zugegeben, hier diese Kartellrechtsabsprachen vorgenommen zu haben aufgrund eines Schuldspruchs aus dem Jahre 2004, das war im September 2004????

Frage:
Und so lange läuft auch bereits die Anklage?

Antwort:
Die Anklage wurde im Anschluss hieran gefertigt und wurde erstmalig am 30.09.2004 eingereicht.

Frage:

Herr Schiefer, was sind jetzt die nächsten Schritte? Wie lange wird die Aufklärung voraussichtlich noch dauern? und gibt es danach denn noch ein Unternehmen namens Infineon?

Antwort:
Es wird sicherlich noch ein Unternehmen namens Infineon geben. Davon gehen wir schwer aus. Es ist ja nicht so, dass man hier das Unternehmen schädigen will, sondern man muss einfach sehen, dass diese ganzen Kartellrechtsabsprachen ja letztendlich die Aktionäre und damit das Unternehmen selbst geschädigt haben. Was die Discovery und den weiteren Verlauf des Verfahrens anbetrifft, so kann man derzeit noch keine Prognosen abgeben. Es ist ja so, dass wir uns derzeit in einem Stadium befinden, wo zumindest die wichtige Hürde genommen wurde, in der der Klageabweisungsantrag der Beklagten abgewiesen wurde. Im wesentlichen Kern zumindest und nun würde man in die Discovery gehen können, die kann sich bis zu sechs oder zwölf Monaten hinziehen. Das ist ungewiss, wie im Einzelnen letztendlich die Recherche vorgenommen werden muss.

Frage:
Herr Schiefer, der Rechtsstreit zieht sich mehr als drei Jahre hin. Das ist ja eine ganz lange Zeit. Welche Auswirkungen hat das z. B. auf die Anleger?

Antwort:
Ja, für die Anleger bedeutet das zunächst, dass sie noch etwas Geduld haben müssen, bis die Klage dann letztendlich durchgeführt oder zum Abschluss gebracht werden kann. Wir befinden uns jetzt in einem Stadium, in dem letztendlich der Klageabweisungsantrag der Gegenseite abgewiesen wurde, zumindest im wesentlichen Kern. Das bedeutet allerdings auch, dass wir jetzt erst in die Recherche in die Discovery gehen müssen und auf Basis der dann stattfindenden Informationsflut, die wir erhalten werden, kann dann das Gericht Erweiterungen zulassen bzw. wird die Klasse zertifiziert. Das bedeutet letztendlich nichts anderes, als der Bereich festgelegt wird, in dessen die Klage vorangetrieben werden kann. Hierzu müssen wir allerdings noch einen Punkt sehen. Sie sagten ja bereits selbst, die Klage ist in 2004 eingereicht worden, das ist richtig, wir müssen aber davon ausgehen, dass sich das Verfahren noch ein bis zwei Jahre hinziehen dürfte.

Vielen Dank an Mark Schiefer, Rechtsanwalt bei Tilp Rechtsanwälte

Bitte schön."

http://www.tilp.de/

05.03.2008
Sto

Exhibit 2

Financial Times Deutschland
01.02.2008
Aufl./Circ. 103.284

# Schlappe für Infineon vor Gericht in USA

## Aktionäre dürfen interne Dokumente einsehen

VON **INA LOCKHART**, FRANKFURT, UND **ANGELA MAIER**, MÜNCHEN

In einem Rechtsstreit mit Infineon in den USA haben Aktionäre einen wichtigen Etappensieg errungen. In einem Beschluss vom 25. Januar hat ein Gericht im kalifornischen San José entschieden, dass die Kläger Einsicht in interne Dokumente des Dax-30-Konzerns nehmen dürfen. Infineon bestätigte dies. „Dieser Gerichtsbeschluss ist ein wichtiger Meilenstein", sagt Anwalt Andreas Tilp, der einen der Hauptkläger vertritt.

Die Sammelklage betrifft Anleger, die zwischen dem 13. März 2000 und dem 19. Juli 2004 Infineon-Papiere gekauft haben. Die Aktionäre verdächtigen den Konzern, den Aktienkurs durch Kartellabsprachen für Speicherchippreise nach oben getrieben und den Kapitalmarkt entsprechend falsch informiert zu haben. Dafür tragen ihrer Meinung nach der Ex-Vorstandsvorsitzende Ulrich Schumacher und Ex-Finanzchef Peter Fischl die Verantwortung. Infineon hatte 2004 illegale Absprachen eingeräumt und einer Strafzahlung in Höhe von 160 Mio. $ an das US-Justizministerium zugestimmt.

Erfahrungsgemäß dürfte das Verfahren auf einen Vergleich hinauslaufen, der meist aber erst in zwei bis drei Jahren erreicht wird. „Statistisch gesehen werden über 90 Prozent aller Fälle verglichen, die die Klageabweisungshürde wie jetzt im Fall Infineon nehmen", sagte Anwalt Tilp. Infineon hielt sich zur Frage, ob Vergleichsverhandlungen aufgenommen werden, bedeckt: „Wir äußern uns zu laufenden Verfahren nicht", sagte ein Sprecher von Infineon.

### Klage gegen Ex-Chef Schumacher

Aus dem Gerichtsdokument geht hervor, dass das Verfahren gegen Schumacher und Fischl weitergeführt wird. Dagegen hat Richter James Ware zwei damalige Infineon-Angestellte aus dem Verfahren entlassen, weil die Klage nach ihrer ersten Zulassung im Mai 2006 nochmals modifiziert eingereicht werden musste. Ein Einspruch Infineons hatte das notwendig gemacht. Der Infineon-Sprecher betonte: „Das Gericht hat nicht nur die Klagen gegen Führungskräfte im mittleren Management abgewiesen, sondern auch den Vorwurf angeblicher Verstöße gegen Insidervorschriften."

Zwei Kläger vertreten die Interessen von 50 000 geschädigten Aktionären. Einer der Kläger ist ein deutscher Privatanleger, der seinen Schaden auf knapp 900 000 $ schätzt und von Tilp vertreten wird. Die US-Investoren haben die Kanzlei Learch und Coughlin beauftragt.

Die Kläger gehen von einer Vergleichszahlung von 500 Mio. $ aus. In Infineon-Kreisen wurde dies als „aus der Luft gegriffen" bezeichnet. Infineon hatte zuletzt im Zusammenhang mit dem Kartellrechtsverstoß 95 Mio. € Rückstellungen in der Bilanz. Damit ist dem Unternehmen zufolge nicht nur für Ansprüche aus der Sammelklage vorgesorgt, sondern auch für andere Verfahren wie Schadensersatzklagen betroffener Kunden.

### Nächster Termin Ende Februar

Im nächsten Schritt müssen die beiden Parteien am 25. Februar vor Gericht erscheinen. Sollte dann ein weiterer Schlichtungsversuch scheitern, werden der Zeitplan und weitere wichtige Eckpunkte für die Sammelklage festgelegt. Dabei geht es beispielsweise um die Zahl der Zeugen, die jede Seite zur Anhörung vorschlägt, und um die Frage, ob noch Sachverständige befragt werden sollen. Zudem muss der Austausch von Dokumenten geklärt werden.

Theoretisch kann Infineon laut der Kanzlei Tilp einen Antrag auf eine erneute Überprüfung der Zulässigkeit des Verfahrens stellen. Dazu müsste der Konzern aber nachweisen, dass das Gericht einen wichtigen Sachverhalt nicht berücksichtigt hat.

Exhibit 3

Frankfurter Allgemeine Zeitung
02.02.2008
Aufl./Circ. 361.541

# Infineon droht Sammelklage

MÜNCHEN, 1. Februar (dpa). Eine Sammelklage in den Vereinigten Staaten gegen den Chipkonzern Infineon hat eine wichtige juristische Hürde genommen. Nach längerem Tauziehen habe ein Gericht in San José der Klage gegen Infineon sowie gegen Finanzvorstand Peter Fischl und den früheren Vorstandsvorsitzenden Ulrich Schumacher nun explizit stattgegeben, sagte Anwalt Andreas Tilp in München. „Dieser Gerichtsbeschluss ist ein wichtiger Meilenstein." Die Klage von insgesamt 50 000 Klägern habe nun die sogenannte Klageabweisungshürde überschritten. „Infineon drohen damit weiterhin hohe Schadensersatzzahlungen, die nach Auffassung der Klägerseite auf Basis von Schätzungen mit dem Fall vertrauter Schadensgutachter eine Höhe von mehr als 500 Millionen Dollar erreichen können." Hintergrund der Klage ist ein Kartellrechtsverstoß von Infineon wegen illegaler Preisabsprachen. Der Konzern hatte 2004 illegale Absprachen eingeräumt und sich mit dem amerikanischen Justizministerium auf eine Vergleichszahlung über 160 Millionen Dollar geeinigt. Daraufhin war der Kurs abgestürzt. Die Kläger werfen Infineon vor, den Aktienkurs mit Hilfe der Absprachen künstlich nach oben getrieben zu haben.

(Auch in FAZ-Ausg. vom 04.02.2007)

Exhibit 4



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
ORLANDO
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Imène Reda, hereby certify that the following are, to the best of my knowledge and belief, true and accurate translations from German into English.

**Infineon 08 03 05_Börsenradio Network AG_Interview Schiefer**
**Class Action Suit Threatens Infineon**
**Setback for Infineon in Court in USA**

*[signature]*

Imène Reda

Sworn to before me this

13th day of March 2009

*[signature]*

Signature, Notary Public

Stephanie Dill
Notary Public, State of New York
No. 01DI6180934
Qualified in NEW YORK County
Commission Expires  Jan 22, _2012_

Stamp, Notary Public

TPT 077 rev. 1 20060612

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

Exhibit C

**No. ---------**

IN THE

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

IN RE INFINEON TECHNOLOGIES AG SECURITIES LITIGATION

JAMES DOLAN, On Behalf of Himself and
All Others Similarly Situated,
***Plaintiff-Respondent*,**
*v.*
INFINEON TECHNOLOGIES AG, INFINEON TECHNOLOGIES NORTH AMERICA
CORP., ULRICH SCHUMACHER, and PETER J. FISCHL
***Defendants-Petitioners***

On Petition from and Order by the United States District Court
for the Northern District of California
The Honorable Judge James Ware, Presiding
(District Court Master File No. 04-4156-JW)

**DECLARATION OF FRANCOIS-XAVIER GÉRARD IN SUPPORT OF
DEFENDANTS' PETITION FOR PERMISSION TO APPEAL**

Melvin R. Goldman
Jordan Eth
Mia Mazza
Philip T. Besirof
Mark R.S. Foster
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
*Attorneys For Defendants-Petitioners*

I, Francois-Xavier Gérard, declare as follows:

1.      I am a Corporate Vice President of Defendant/Petitioner Infineon Technologies AG ("Infineon AG") in Neubiberg, Germany.  I am the head of the company's finance and treasury department.  I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently under oath to the matters set forth herein.

2.      During the class period, Infineon AG developed and manufactured dynamic random access memory ("DRAM").  In 2006, Infineon AG spun-off its DRAM business unit into a separate company, Qimonda AG.  Following the spin-off, Infineon AG retained a 85.9% ownership of Qimonda AG that was subsequently reduced to 77.5%.

3.      On January 23, 2009, Qimonda AG filed to open insolvency proceedings in court in Munich, Germany.  As a result, Infineon AG has had to recognize a charge of $246 million and may face additional potential liabilities.

4.      In the last year, the semiconductor industry has experienced progressive deterioration in business conditions and falling demand for products.  Infineon AG has been severely affected by these conditions.

5.      Infineon AG's revenues are falling and it expects sales to drop by at least 15% in the 2009 fiscal year.

6.      Infineon AG will be delisted from Germany's blue-chip index, DAX 30 effective March 23, 2009.

7.      Market capitalization is a measurement of the share price multiplied by the number of outstanding shares — in effect, it is the market's valuation of a company's worth, including its perceived future prospects.

8.      Since the first trading day in March 2008, Infineon AG's market capitalization has fallen more than $5 billion.  During March 2009, Infineon AG's

total market capitalization has fluctuated between $345 million and $600 million, based on the closing price of Infineon AG's stock.

9. Certification of a class that includes the Foreign Purchasers places Infineon AG under undue pressure to settle this lawsuit, despite the existence of strong and substantial grounds for defense on the merits.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on March 19, 2009, in Neubiberg, Germany.

François-Xavier Gérard

1 9. März 2009

_____

Francois-Xavier Gérard

# UNITED STATES COURT OF APPEALS for the NINTH CIRCUIT
## Office of the Clerk

### General Information
### *COUNSELED CASES*

### (DECEMBER 2008)

## 1.     Main Office - San Francisco

| Mailing Address (U.S. Postal Service) | Overnight Delivery (FedEx, DHL, UPS etc) | Location (Street Address) |
|---|---|---|
| Office of the Clerk James R. Browning Courthouse U.S. Court of Appeals P.O. Box 193939 San Francisco, CA 94119-3939 | Office of the Clerk James R. Browning Courthouse U.S. Court of Appeals 95 Seventh Street San Francisco, CA 94103-1526 | Office of the Clerk James R. Browning Courthouse U.S. Court of Appeals 95 Seventh Street San Francisco, CA 94103 |

## 2.     Website

The Court's website at www.ca9.uscourts.gov is a tremendous resource.  On it, you will find copies of the Court's Rules and General Orders, information about Electronic Case Filing, answers to Frequently Asked Questions, directions to the Courthouses, forms necessary to gain admission to the Bar of this Court, and an invitation to join our Pro Bono Program.  You will also find links to practice manuals as well as this Court's Dispositions and recordings of oral arguments.

## 3.  Electronic Case Filing

On September 2, 2008, the U.S. Court of Appeals for the Ninth Circuit began to allow counsel to file certain documents  using the Court's Case Management/ Electronic Case Files (CM/ECF) system. Until December 31, 2008, use of the CM/ECF system is voluntary. Effective January 2, 2009, use of the CM/ECF

1

system will be mandatory for all attorneys filing in this Court, unless they are granted an exemption from using the CM/ECF system.

Registration is required.  To register and for all information about CM/ECF, go to the Court's website at www.ca9.uscourts.gov  and click on the **CM/ECF** button.

The Administrative Order Regarding Electronic Filing in All Ninth Circuit Cases contains all Rules regarding Appellate ECF and tells you what documents can and cannot be filed electronically.

## 4.    Phone Numbers

| | |
|---|---|
| General Information | (415) 355-8000 |
| Appellate Commissioner | 355-8110 |
| Attorney Admissions | 355-7800 |
| Calendar Unit | 355-8190 |
| Circuit Executive | (415) 355-8800 |
| Circuit Mediators | 355-7900 |
| Computer Operations | 355-7890 |
| Death Penalty | 355-8197 |
| Divisional Offices: | |
|     Pasadena | (626) 229-7250 |
|     Portland | (503) 833-5300 |
|     Seattle | (206) 553-2937 |
| Docketing - Civil | (415) 355-7830 |
| Docketing - Criminal/Agency | 355-7840 |
| Extensions of Time/Briefs: | |
|     Written Motions | 355-7860 |

| | |
|---|---|
| 14 day Telephone Extension: | |
| (Northern & Eastern California; Hawaii, Guam, Arizona, Nevada) | 355-7853 |
| (Central & Southern California) | (626) 229-7261 |
| (Eastern & Western Washington, Idaho, Montana) | (206) 553-0191 |
| Judicial Misconduct | (415) 355-8099 |
| Library | 355-8650 |
| Motions Attorneys | 355-8020 |
| Operations Assistants (CJA) | 355-7920 |
| Personnel | 355-7869 |
| Procedural Motions | 355-7860 |
| Pro Se Unit | 355-8040 |
| Records Unit | 355-7820 |
| Tours | 355-7930 |

## 5.    Authorities and Resources

- **Rules of Practice** - The Federal Rules of Appellate Procedure (Fed. R. App. P.); the Ninth Circuit Rules of Practice (9th Cir. R.), and the Administrative Order Regarding Electronic Filing in All Ninth Circuit Cases govern practice before this court.  Copies of the rules are available on this court's website at www.ca9.uscourts.gov and from the Clerk's offices in San Francisco, Pasadena and Seattle.  Send a written request together with a self-addressed return mailing label.
- The court has prepared a practice videotape which is available through the Clerk's office in San Francisco for $15.00.  Continuing legal education credit for viewing this videotape is available in most jurisdictions.

6.      **Admission to the Bar of the Ninth Circuit**

•       All attorneys practicing before the Court must be admitted to the Bar of the Ninth Circuit.  Fed. R. App. P. 46(a) and 9th Cir. R. 46-1.2.
•       If you are NOT already admitted, obtain a form from our website or by calling the number listed above and submit it to the Clerk's Office in San Francisco together with the admission fee of $190.00.  The check should be made payable to Clerk, United States Court of Appeals.  After your application is processed, you will be mailed a certificate of admission.

7.      **Notices of Change of Address**

•       Counsel who are registered Appellate Electronic Filers must update their street addresses or email addresses via PACER at: https://pacer.psc.uscourts.gov/psco/cgi-bin/cmecf/ea-login.pl
•       Counsel who are not registered must file a change of address with the Court.

8.      **Record Preparation and Briefing Schedule**

•       In DIRECT CRIMINAL appeals, the district court sets the schedule.  If you do not receive a schedule within 14 days of the filing of the Notice of Appeal you should contact this Court.
•       In CIVIL appeals, this court sets the schedule at the time the appeal is docketed in this court.  You should receive your briefing schedule at the same time you receive this information.
•       If the appellant files the opening brief earlier than the due date, the due date for the appellee's brief does not advance.  It remains due on the date reflected in the briefing schedule.  9th Cir. R. 31-2.1.
•       Motions that stay the briefing schedule are listed in Circuit Rule 27-11.

9.      **Excerpts of Record**

•       This Court requires excerpts of record instead of an appendix.  9th Cir. R. 30-1.1(a).
•       Five (5) separately-bound excerpts of record with WHITE covers shall be filed at the time appellant files or electronically submits the Opening Brief. Each party shall be served with one copy of the excepts.  9th Cir. R. 30-1.

Please review 9th Cir. R. 30-1.3, 30-1.4, 30-1.5, and 30-1.6 to see a list of the specific contents and format. Also see Rule 4 of the "Administrative Order Regarding Electronic Filing," which is available on the Court's CM/ECF webpage.

- For excerpts that exceed 75 pages, the first volume must comply with 9th Cir. R. 30-1.6.
- If excerpts exceed 300 pages, you will need to file the excerpts in multiple volumes. 9th Cir. R. 30-1.6(b).
- Appellee may file supplemental excerpts and appellant may file further excerpts. 9th Cir. R. 30-1.7 and 30-1.8.
- If you are an appellee responding to a Pro Se brief that did not come with excerpts, then your excerpts need only include the contents set out at 9th Cir. R. 30-1.6.
- If you are involved in an appeal from a district court's review of an agency action, your excerpts shall include the items listed at 9th Cir. R. 17-1.

## 10.   Motions Practice

## A.   General Information

Fed. R. App. P. 27 and 32(c)(1) and 9th Cir. R. 27 govern motions practice and specific types of relief. Some of the basic points include:

- Neither a notice of motion nor a proposed order is required. *See* Fed. R. App. P. 27(a)(2)(C)(ii), (iii).
- Motions may be supported by an affidavit or declaration. 28 U.S.C. §1746.
- A response to a motion is due 8 business days from the service of the motion. Fed. R. App. P. 27(a)(3)(A). The reply is due 5 business days from service of the response. Fed. R. App. P. 27(a)(4), *see also* Fed. R. App. P. 26(c). A response requesting affirmative relief and/or relief by a date certain must include that request in the caption. Fed. R. App. R. 27(a)(3)(B).
- A motion should provide the position of the opposing party. *See* Advisory Committee Note to Rule 27-1(5). *See also* 9th Cir. R. 31-2.2(b)(6) (statement regarding the position of opposing party or a statement about why that information is unavailable required in motions for extensions of time).
- Motions filed **after a case has been scheduled for oral argument, has been argued, is under submission or that has been decided by a panel,**

must include the date of argument, submission or decision.  If known, you must also include the names of the judges on the panel.  9th Cir. R. 25-4.

**B.     Emergency or Urgent Motions - Circuit Rule 27-3**

★     **All** emergency and urgent motions must conform with the provisions of 9th Cir. R. 27-3.  Motions requesting procedural relief do NOT fall within the types of matters contemplated by 9th Cir. R. 27-3.

★     **Prior to filing any emergency motion, the moving party MUST contact an attorney in the Motions Unit in San Francisco at (415) 355-8020.**

★     When it is absolutely necessary to notify the court of an emergency requiring its attention outside of standard office hours, the movant shall call (415) 355-8509.  This line is monitored by court staff.  Keep in mind that this line is for true emergencies that cannot wait until the next business day, such as emergencies that involve an imminent execution or removal from the United States.

**C.     Motions for Extensions of Time to File the Trial Transcript**

•     The court reporter is required to file a motion for an extension of time to file the transcripts.  9th Cir. R. 11-1.1.

•     If the reporter fails to move for an extension of time, appellant is required to file a Ninth Circuit Rule 11-1.2 notice.

**D.     Motions for Extensions of Time to File the Briefs**

A party may seek only ONE of either a Written Extension or an Oral Extension:

★     Written Extension

•     Requests for extensions of more than 14 days will be granted only upon a written motion supported by a showing of diligence and substantial need. This motion should be filed ***at least seven calendar days before the due date for the brief***.  The motion shall be accompanied by an affidavit or declaration that includes all of the information listed at 9th Cir. R. 31-2.2(b).

•     This court will ordinarily make some adjustment to the schedule in response to a motion.  *See* Circuit Advisory Note to Rule 31-2.2.  The court expects

6

that the brief will be filed within the requested period of time.  *Id.*

★     Oral Extension

•     If good cause is shown, the clerk may grant a SINGLE extension of no more
      than 14 days to file an opening, answering or reply brief.  9th Cir. R. 31-
      2.2(a).  You may apply for such an extension by calling the appropriate
      number listed below:

Central/Southern Districts of California          (626) 229-7261

Districts of Alaska, Montana, Idaho,              (206) 553-0191
Oregon & Eastern or Western Washington

All Other Districts                               (415) 355-7853

## 11.   Mediation Program

•     Civil Appeals Docketing Statements are required in all CIVIL
      COUNSELED cases **except**: (a) habeas cases (28 U.S.C. §§ 2241, 2254 and
      2255) and (b) petitions for Writs (28 U.S.C. § 1651).  You may obtain a
      Civil Appeals Docketing Statement form from the district court clerk or the
      Ninth Circuit Website.
•     The completed form should be filed together with the Notice of Appeal.
      Late filed forms should be filed with the Court of Appeals and must include
      a Ninth Circuit docket number.  The docketing statement is used only to
      assess settlement potential.
•     If you are interested in requesting a conference with a mediator, you may
      call the Mediation Unit at (415) 355-7900 or make a written request to the
      Chief Circuit Mediator.  Requests for mediation will be kept confidential if
      so requested.

## 12.   Court Calendars

•     Hearing notices for oral argument calendars are distributed approximately
      four to five weeks before the date for argument.  Generally, cases are heard
      in the administrative unit where they originate.  The Court sits monthly in

San Francisco, Pasadena and Seattle.  The court sits in Portland every other month, depending on caseload.  The Court also hears argument twice a year in Honolulu and once a year in Anchorage.

- There will only be a change of date or location of oral argument for good cause.  Any request to continue an argument date filed within 14 days of the hearing will ONLY be granted upon a showing of exceptional circumstances.  9th Cir. R. 34-2.
- Oral argument will be conducted in all cases UNLESS all members of the panel agree that the decisional process would not be significantly aided by oral argument.  Fed. R. App. P. 34.




Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
95 Seventh Street
Post Office Box 193939
San Francisco, California 94119-3939

Molly C. Dwyer
Clerk of Court

(415) 355-8000

March 20, 2009

_____

Docket No.:      09-80053
Short Title:     Infineon Technologies AG, et al v. James Dolan

_____

Dear Counsel

This is to acknowledge receipt of Petition for Permission to Appeal under 23(f).

All subsequent letters and request for information regarding this matter will be added to your file to be considered at the same time the cause is brought before the court.

The file number and the title of your case should be shown in the upper right corner of your letter to the clerk's office.  All correspondence should be directed to the above address pursuant to Circuit Rule 25-1.


Very truly yours,

Molly C. Dwyer
Clerk of Court


_____

By: Holly Crosby
Deputy Clerk